DECISION
{¶ 1} Relator, Nicole L. Grimm, filed this original action, which requests that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order, which denied relator's request for an increase in her *Page 2 
percentage of permanent partial disability ("PPD") compensation, and ordering the commission to grant her an increase in her percentage of PPD after considering the report of Richard M. Ward, M.D.
 {¶ 2} This court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court issue a writ of mandamus ordering the commission to reevaluate and determine the percentage of increase in relator's PPD award. (Attached as Appendix A.) No party filed objections to the magistrate's findings of fact, and we adopt them as our own. However, both relator and her employer, AT T Teleholdings, Inc. ("AT T"), filed objections to the magistrate's conclusions of law. The following facts are relevant to our resolution of those objections.
 {¶ 3} Relator sustained a work-related injury in 2004. Her claim was allowed for cervical and lumbar sprains. In December 2005, the administrator of the Ohio Bureau of Workers' Compensation ("BWC") awarded relator a five percent PPD award for this injury.
 {¶ 4} In August 2006, the commission issued an order granting additional allowances relating to the 2004 injury. Specifically, the commission order stated: "The claim is additionally allowed for BILATERAL KNEE SPRAIN/STRAIN AND FOR AGGRAVATION OF PRE-EXISTING ARTHRITIS OF THE RIGHT KNEE." However, the parties thereafter filed a stipulation, which stated that the evidence did not support an allowance for a left knee sprain. In other words, the commission should have *Page 3 
granted an additional allowance only for right knee sprain/strain and aggravation of preexisting arthritis of the right knee.
 {¶ 5} In September 2006, relator applied for an increase in her PPD percentage based on the additional allowances. She submitted no medical evidence in support of her application.
 {¶ 6} In December 2006, Thomas Lawson, D.O., examined relator and assigned a whole person impairment ("WPI") of five percent. Dr. Lawson identified the allowed conditions to include "bilateral" knee sprain. However, he found no impairment associated with a left knee sprain.
 {¶ 7} In January 2007, BWC declined to award relator any increase in her PPD percentage. On review, a commission district hearing officer ("DHO") denied relator's request for an increase, based on Dr. Lawson's report.
 {¶ 8} Thereafter, relator submitted the March 2007 report of Dr. Richard M. Ward, who opined that relator had a 13 percent WPI based solely on her right knee conditions.
 {¶ 9} In an April 2007 interlocutory order, a staff hearing officer ("SHO") found that a new exam was necessary "in light of the deficiency of the current exam from Dr. Lawson." Specifically, the SHO stated that Dr. Lawson had "failed to consider all the recognized file conditions in rendering his opinion." The SHO clarified that the allowed conditions included only cervical and lumbar sprain, right knee sprain, and aggravation of pre-existing arthritis of the right knee. Thus, in reality, Dr. Lawson had considered more conditions than necessary. *Page 4 
 {¶ 10} In June 2007, David M. Vaziri, M.D., examined relator. He identified the allowed conditions to include "Bilateral knee sprain." He assigned no impairment to that condition and also assigned no impairment for lumbar and neck sprains. However, he assigned a ten percent WPI based on the condition of right knee arthropathy.
 {¶ 11} Following an August 2007 hearing, the SHO affirmed the DHO order and denied relator's request for an increase in her PPD percentage, based on Dr. Lawson's report. The SHO also found that Dr. Ward's report could not be considered because it was filed after the DHO's hearing.
 {¶ 12} As noted, the magistrate concluded that a writ should be issued. More specifically, the magistrate concluded that the commission did not abuse its discretion by refusing to consider Dr. Ward's report. However, the magistrate concluded that the commission abused its discretion by declining to grant an increase in relator's PPD percentage based upon the right knee conditions when the medical evidence attributed impairment solely to those conditions.
 {¶ 13} Relator has filed two objections to the magistrate's decision. First, relator argues that the magistrate failed to follow the plain language of R.C. 4123.57(A), which does not preclude a claimant from submitting evidence in support of an application for an increase, even after the DHO hearing. However, we agree with the magistrate's analysis of R.C. 4123.57 and related administrative code provisions. We adopt that analysis as our own. Accordingly, relator's first objection is overruled.
 {¶ 14} Second, relator argues that the magistrate erred by finding that Dr. Lawson's report was some evidence on which the commission could rely. According to *Page 5 
relator, the SHO's March 2007 interlocutory order rejected Dr. Lawson's report, and the commission could not thereafter rely on it. We disagree.
 {¶ 15} The March 2007 order identified a "deficiency" in Dr. Lawson's "exam" based on Dr. Lawson's inclusion of bilateral knee sprain as an allowed condition, rather than just a right knee sprain. The order did not invalidate Dr. Lawson's report. In fact, relator argued before the magistrate that Dr. Lawson's inclusion of the left knee was "harmless because he did not find any impairment to that condition." Moreover, we note that Dr. Vaziri's exam suffered from the same deficiency, as Dr. Vaziri also included bilateral knee sprain as an allowed condition. The doctors' inclusion of bilateral knee sprain as an allowed condition obviously resulted from the commission's August 2006 order, which the parties stipulated should not have included the left knee. While Dr. Lawson, like Dr. Vaziri, examined relator's left knee, Dr. Lawson, again like Dr. Vaziri, did not assign impairment related to the left knee. Dr. Lawson's inclusion of the left knee in his examination did not preclude the commission from relying on the report. Accordingly, we overrule relator's second objection.
 {¶ 16} AT T also filed an objection to the magistrate's decision. In it, AT T argues that the magistrate erred in determining that the commission must reevaluate and determine the percentage of PPD increase. The commission does not object to the magistrate's order. We agree with the magistrate. All evidence before the commission on the application for an increase indicated impairment based solely on the new conditions. Therefore, as the magistrate concluded, the commission abused its discretion by finding a zero percent increase. Accordingly, we overrule AT T's objection. *Page 6 
 {¶ 17} Finding no error of law or other defect on the face of the magistrate's decision, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with that decision, we grant a writ of mandamus ordering the commission to reevaluate and determine the percentage of increase in relator's PPD award.
Objections overruled, writ of mandamus granted.
 SADLER and KLATT, JJ., concur. *Page 7 
 MAGISTRATE'S DECISION IN MANDAMUS {¶ 18} Relator, Nicole L. Grimm, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's request for an increase in her percentage of permanent partial disability ("PPD") compensation and ordering the *Page 8 
commission to grant her an increase in her percentage of PPD after considering the report of Richard M. Ward, M.D.
Findings of Fact: {¶ 19} 1. Relator sustained a work-related injury on September 10, 2004, and her claim was originally allowed for cervical and lumbar sprains.
 {¶ 20} 2. On August 4, 2005, relator filed an application for the determination of the percentage of PPD resulting from her cervical and lumbar sprains.
 {¶ 21} 3. Relator was examined by Khalid B. Darr, M.D., who opined that relator had a five percent whole person impairment resulting from her cervical and lumbar sprains.
 {¶ 22} 4. In an order mailed December 5, 2005, the administrator of the Ohio Bureau of Workers' Compensation ("BWC") awarded relator a five percent PPD award based upon the report of Dr. Darr.
 {¶ 23} 5. Thereafter, relator's claim was additionally allowed for right knee sprain and aggravation of preexisting arthritis of the right knee.
 {¶ 24} 6. In December 2006, relator filed an application seeking an increase in her percentage of PPD. There is nothing in the record to suggest that relator submitted any medical evidence in support of her request for an increase. The application was based solely upon the fact that new conditions had been allowed.
 {¶ 25} 7. Relator was examined by Thomas Lawson, D.O., who ultimately opined that relator's right knee condition caused her to have a two percent whole person impairment. Although Dr. Lawson inadvertently also considered relator's left knee, he assigned no impairment to that condition. *Page 9 
 {¶ 26} 8. By order mailed January 3, 2007, the administrator of the BWC determined that no increase in percentage of PPD be awarded to relator.
 {¶ 27} 9. Relator appealed and the matter was heard before a district hearing officer ("DHO") on February 20, 2007. A review of that order indicates that neither relator, her employer, nor the administrator were represented at this hearing. Based upon the report of Dr. Lawson, the DHO denied relator's request for an increase.
 {¶ 28} 10. In support of her appeal, relator submitted the March 5, 2007 report of Richard M. Ward, M.D. Dr. Ward opined that relator had a 13 percent impairment solely relating to her right knee conditions.
 {¶ 29} 11. Relator's appeal was heard before a staff hearing officer ("SHO") on March 30, 2007. Because Dr. Lawson had listed injuries to relator's left knee as part of the allowed claim, the SHO issued an interlocutory order so that a new medical examination could be obtained.
 {¶ 30} 12. Relator was examined by David M. Vaziri, M.D., on June 18, 2007. Dr. Vaziri opined that relator had a ten percent whole person impairment due to her right knee condition. Dr. Vaziri also examined relator's left knee; however, just like Dr. Lawson did, Dr. Vaziri concluded that relator had a zero percent impairment for her left knee condition.
 {¶ 31} 13. The matter was heard before an SHO on August 28, 2007. The SHO affirmed the prior DHO order and denied relator's request for an increase in the percentage of her PPD award based upon the report of Dr. Lawson. The SHO further indicated that she did not consider the report of Dr. Ward because that report was filed after the DHO hearing and that it could not be considered. *Page 10 
 {¶ 32} 14. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 33} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 34} In this mandamus action, relator contends that the commission abused its discretion when it denied her an increase in her percentage of PPD without considering the report of Dr. Ward. Relator contends that the Ohio Administrative Code provisions upon which the commission relied are invalid. Further, relator contends that the commission abused its discretion when it denied her an increase in her percentage of PPD based upon a medical report that specifically attributed a two percent whole person impairment solely to the newly allowed conditions. *Page 11 
 {¶ 35} First, the magistrate finds that the commission did not abuse its discretion by refusing to consider the medical report of Dr. Ward which relator submitted after the hearing before the DHO.
 {¶ 36} R.C. 4123.57 provides for determinations of partial disability and provides, in pertinent part:
 (A) * * * An employee may file an application for a subsequent determination of the percentage of the employee's permanent disability. If such an application is filed, the bureau shall send a copy of the application to the employer or the employer's representative. No sooner than sixty days from the date of the mailing of the application to the employer or the employer's representative, the administrator shall review the application. The administrator may require a medical examination or medical review of the employee. The administrator shall issue a tentative order based upon the evidence before the administrator, provided that if the administrator requires a medical examination or medical review, the administrator shall not issue the tentative order until the completion of the examination or review.
 The employer may obtain a medical examination of the employee and may submit medical evidence at any stage of the process up to a hearing before the district hearing officer, pursuant to rules of the commission. The administrator shall notify the employee, the employer, and their representatives, in writing, of the nature and amount of any tentative order issued on an application requesting a subsequent determination of the percentage of an employee's permanent disability. An employee, employer, or their representatives may object to the tentative order[.] * * * If an objection is timely made, the application for a subsequent determination shall be referred to a district hearing officer who shall set the application for a hearing with written notice to all interested persons. No application for subsequent percentage determinations on the same claim for injury * * * shall be accepted for review by the district hearing officer unless supported by substantial evidence of new and changed circumstances developing since the time of the hearing on the original or last determination. *Page 12 
 {¶ 37} Ohio Adm. Code 4121-3-15 supplements R.C. 4123.57 and provides, in pertinent part:
 (A) Definitions
 (1) For purpose of this rule, both an application for the determination of percentage of permanent partial disability and an application for an increase in the percentage of permanent partial disability will be referred to as an "application."
 * * *
 (B) Procedure upon filing of objection to a tentative order issued by the bureau of workers' compensation[.] * * *
 (1) Upon receipt of a written notification of an objection to a tentative order * * *, the matter is to be referred to the commission. The commission will set the application for hearing before a district hearing officer. The party filing the objection shall also provide a copy of the objection to the opposing party[.] * * *
 (1) Notices of the hearing shall be mailed[.] * * *
 (C) Procedures upon referral to a district hearing officer
 * * *
 (2) If the injured worker is the only party that files an objection to a tentative order and the injured worker intends to submit medical evidence not previously submitted in support of the injured worker's objection, copies of the medical evidence are to be provided to the employer[.] * * * Upon the employer's receipt of the medical evidence submitted by the injured worker, should the employer desire to obtain a medical examination of the injured worker, the employer shall schedule the examination[.] * * *
 * * *
 (4) The parties or their representatives shall provide to each other, as soon as available and prior to the district hearing officer hearing, a copy of the evidence the parties intend to submit at the district hearing officer hearing. *Page 13 
 (E) Hearing officer guidelines for the adjudication of applications for the determination of the percentage of permanent partial disability and applications for an increase in the percentage of permanent partial disability:
 (1) In the determination of percentage of permanent partial disability under section 4123.57(A) of the Revised Code, hearing officers are to base a percentage of permanent partial disability award on medical or clinical findings reasonably demonstrable.
 * * * [T]he hearing officer shall proceed with the hearing and render a decision based upon competent medical evidence submitted to the claim file[.] * * *
 An application for reconsideration, review, or modification which is filed within ten days of receipt of receipt of the decision of a district hearing officer issued under section 4123.57(A) of the Revised Code shall be heard by a staff hearing officer and the decision of the staff hearing officer shall be final. At a hearing on reconsideration of a decision of a district hearing officer on the initial application for the determination of the percentage of permanent partial disability, the staff hearing officer may consider evidence that was not on file at the time of the district hearing officer hearing.
(Emphasis added.)
 {¶ 38} Ohio Adm. Code 4123-3-15 provides further as follows:
 (C) "Application for Determination of Percentage of Permanent Partial Disability or Increase of Permanent Partial Disability" pursuant to division (A) of section 4123.57 of the Revised Code.
 (1) An "Application for * * * Increase of Permanent Partial Disability" shall be completed and signed by the applicant or applicant's attorney and shall be filed with the bureau of workers' compensation. An application for an increase in permanent partial disability must be accompanied by substantial evidence of new and changed circumstances which have developed since the time of the hearing on the original or last determination. * * * Except where an *Page 14 
additional condition has been allowed in the claim and the request is for an increase in permanent partial disability based solely on that additional condition, a request for an increase in permanent partial disability filed without medical documentation shall be dismissed by the bureau. * * *
 (2) Upon the filing of the application * * *, the application shall be referred to the bureau for review and processing. The bureau shall mail a copy of the application and any accompanying proof to the employer and the employer's representative. The employer shall submit any proof within its possession bearing upon the issue to the bureau[.] * * *
 Where the application is for an increase in the percentage of permanent partial disability * * *, the applicant shall either be examined, or the claim referred for review by a physician designated by the bureau[.] * * * Either the employee or the employer may submit additional medical evidence following the examination by the bureau medical section as long as copies of the evidence are submitted to all parties.
 After completion of the review or examination by a physician designated by the bureau, the bureau may issue a tentative order based upon the evidence in file. * * *
 The bureau shall enter a tentative order on the request for an increase of permanent partial disability and shall notify the employee, the employer, and their representatives[.] * * * The employee, the employer, or their representatives may object to the tentative order[.] * * * If an objection is timely made, the matter shall be referred to a district hearing officer who shall set the application for a hearing in accordance with the rules of the industrial commission. The employer may obtain a medical examination of the employee and submit a defense medical report at any stage of the proceedings up to a hearing before a district officer.
 {¶ 39} Based upon the above statutes and rules, it is clear that when an application for an increase in the percentage of PPD has been filed by a claimant, whatever medical evidence is to be submitted either by the claimant or the employer is *Page 15 
to be submitted prior to the hearing before the DHO. It is only when a claimant has filed an initial application for the determination of the percentage of PPD that new evidence may be considered by an SHO. As such, the rules with regard to the presentation of evidence on an application for an increase in the percentage of PPD compensation affect the claimant and the employer equally: both must present their medical evidence before the hearing proceeds before the DHO and there is no provision for either the claimant or the employer to present evidence following the DHO hearing and before the matter is heard before the SHO. Further, the DHO is required to determine the percentage of permanent disability as "evidenced by medical or clinical findings reasonably demonstrable." R.C. 4123.57(A). This can only be done when medical evidence is actually presented. If the claimant and the employer fail to present any medical evidence before the DHO hearing, then the determination could only be based upon the examination ordered by the BWC since evidence that new conditions have been allowed, standing alone, is not evidence of "medical or clinical findings reasonably demonstrable." As always, claimants bear the burden of proof and although the rules are to be construed in favor of claimants, nowhere are claimants allowed to wait until the last minute to submit their proof. If relator's argument was accepted, then, since Dr. Lawson's report is actually some evidence upon which the commission could have relied, the employer might have been willing to pay a two percent increase and might not have presented any medical evidence prior to the DHO hearing. However, if the employer had a copy of Dr. Ward's report finding a 13 percent impairment prior to the DHO hearing, then the employer may very well have wanted to submit its own evidence challenging relator's evidence. As the statute provides, the employer could only have *Page 16 
presented its evidence prior to the DHO hearing. If claimants can wait to present medical evidence until the SHO hearing, employers are put at a distinct disadvantage which cannot be contemplated by application of relator's argument. The magistrate does not find a conflict between the statute and the rule and finds the commission's interpretation to be reasonable and valid.
 {¶ 40} If this would have been an initial application, either relator or the employer could have presented medical evidence after the DHO hearing which could be considered by the SHO. However, this was not an initial application — this was an application for an increase in the percentage of PPD compensation. As such, the commission did not abuse its discretion when it refused to consider the report of Dr. Ward.
 {¶ 41} Relator also contends that the commission abused its discretion by failing to award her at least a two percent increase in her PPD compensation. Relator points out that she was originally awarded a five percent PPD award based solely on her allowed cervical and lumbar sprains. Relator's application for an increase in the percentage of PPD compensation was based solely upon the newly allowed conditions involving her right knee. Dr. Lawson examined relator and he specifically found that relator's right knee conditions warranted a two percent PPD award. Dr. Lawson determined that relator had a zero percent whole person impairment for her cervical and lumbar sprains.
 {¶ 42} Similarly, when Dr. Vaziri examined relator, Dr. Vaziri concluded that relator's allowed conditions of lumbar and cervical sprains yielded a zero percent whole *Page 17 
person impairment; however, Dr. Vaziri opined that relator's allowed right knee conditions warranted a ten percent whole person impairment award.
 {¶ 43} As noted previously, relator had already been awarded a five percent PPD award based solely upon the allowed conditions of lumbar and cervical sprains. In considering relator's application for an increase in the percentage of her PPD based solely upon the newly allowed conditions relating to her right knee, the medical evidence supported findings of either two percent, ten percent, or some percent in between the percents attributed by Drs. Lawson and Vaziri. Because all the medical evidence before the commission indicated that relator was suffering an additional impairment due solely to the newly allowed knee condition, the commission did abuse its discretion in finding a zero percent increase based upon relator's right knee condition.
 {¶ 44} Relator also argues that the commission abused its discretion when it failed to consider all the medical evidence presented. In this regard, relator contends that the commission did not consider the report of Dr. Vaziri. While relator acknowledges that the commission is not required to identify all the evidence reviewed, but only the evidence upon which the commission relied, relator points out that, in this instance, the commission did give an explanation for why it did not consider the report of Dr. Ward. As such, relator contends that the record is not clear and that this court should issue a writ of mandamus ordering the commission to specifically consider the report of Dr. Vaziri. For the reasons that follow, this magistrate disagrees.
 {¶ 45} As noted previously, the law requires that the commission identify the evidence upon which it relies and provide a brief explanation for its decision. Noll. *Page 18 
Contrary to relator's arguments, the magistrate finds that State ex rel.Fultz v. Indus. Comm. (1994), 69 Ohio St.3d 327, does not apply in this situation. In Fultz, the commission had specifically listed the evidence it considered in making its determination. Because the commission omitted two reports from its list of evidence which it considered, the court found that the matter must be returned to the commission for further consideration. In the present case, the commission did not set out to identify all the medical evidence it considered. Instead, the commission specifically identified the report of Dr. Lawson as the evidence upon which it relied. The commission did mention the report of Dr. Ward and specifically explained that report had not been considered at all because it was filed after the hearing before the DHO. The magistrate finds that this does not lead to an inference that the commission did not consider the report of Dr. Vaziri. The SHO had three reports: Drs. Lawson, Vaziri and Ward. The commission specifically noted that the report of Dr. Ward could not be considered because it was filed after the DHO hearing. As such, there were only two reports which remained upon which the commission could base its determination: Drs. Lawson and Vaziri. The commission was required to list the report upon which it relied and it did so. The magistrate finds that there is noFultz violation in this case.
 {¶ 46} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion by refusing to consider the report of Dr. Ward and by failing to mention its consideration of the report of Dr. Vaziri. However, the magistrate does find that relator has demonstrated the commission abused its discretion by failing to grant her an increase in her percentage of PPD based upon the newly allowed right knee conditions when the medical evidence submitted attributed *Page 19 
impairment solely to those newly allowed conditions. As such, this court should issue a writ of mandamus ordering the commission to reevaluate and determine the percentage of increase in relator's PPD award. *Page 1