THE STATE EX REL. GALLIGAN, APPELLEE, *v.* INDUSTRIAL COMMISSION OF

OHIO; TENABLE PROTECTIVE SERVICES, INC., APPELLANT.

[Cite as *State ex rel. Galligan v. Indus. Comm.*,

124 Ohio St.3d 233, 2010-Ohio-3.]

*Workers' compensation — Temporary total disability — Claimant terminated for*
*violating work rules — Voluntary abandonment of employment —*
*Employer's failure to include employee handbook in record — Absence of*
*handbook not fatal to voluntary-abandonment defense when other*
*evidence in record establishes that infraction for which claimant was*
*terminated was a known company policy.*

(No. 2009-0141 — Submitted November 3, 2009 — Decided January 6, 2010.)

APPEAL from the Court of Appeals for Franklin County, No. 08AP-36,

2008-Ohio-6426.

_____

**Per Curiam**.

{¶ 1} At issue is appellee Betty J. Galligan's eligibility for temporary total disability compensation after she was fired by appellant Tenable Protective Services, Inc. Galligan was hired as a security officer in February 2006 and was fired a year later after accumulating approximately two dozen citations — oral and written — for violating work rules. These violations included inappropriate sexual remarks, breach of confidentiality protocol, time-sheet irregularities, failure to remain at her post, and multiple incidents of tardiness/absenteeism, insubordination, and sleeping at her post. At least seven violations occurred before her August 2006 industrial injury, and the rest occurred after.

{¶ 2} On at least four occasions, Tenable warned Galligan that further violations would lead to disciplinary action. On November 9, 2006, she was cited

for insubordination and warned by memo that "[*a*]*ny* future violations of *any* company policy will result in immediate termination of employment." (Emphasis added.) Less than three weeks later, a supervisor found Galligan asleep at her post and warned her that disciplinary action would follow another occurrence. A second violation for sleeping on the job six days later generated the same response. A third violation on February 23, 2007, finally resulted in Galligan's dismissal.

{¶ 3} About a month after she was fired, Galligan filed a motion for temporary total disability compensation with the Industrial Commission of Ohio. The commission denied compensation after finding that Galligan's discharge constituted a voluntary abandonment of employment under *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.* (1995), 72 Ohio St.3d 401, 650 N.E.2d 469.

{¶ 4} Galligan filed a complaint in mandamus in the Court of Appeals for Franklin County. Litigation centered on *Louisiana-Pacific*, in which we held that to constitute a voluntary abandonment, a firing must arise from an employee's "violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee." Id. at 403, 650 N.E.2d 469. The court of appeals magistrate concluded that meaningful review was foreclosed by Tenable's failure to submit its employee handbook into the record:

{¶ 5} "Obviously, if the language of the written work rule is unknown to the commission and to this court, it is impossible for the commission or this court to determine whether the rule clearly defines the prohibited conduct that resulted in the termination."

{¶ 6} The magistrate rejected Tenable's assertion that the absence of the handbook was harmless because Galligan's disciplinary write-ups, i.e.,

2

"Employee Consultations," that were in the record sufficiently set forth the policies that were violated:

**{¶ 7}** "The concern is that the "Employee Consultations" do not produce the very language of the written rules that allegedly underlie the warnings. Moreover, in the absence of the employee handbook, the context of the specific written rule at issue cannot be known even if the language of the written rule itself be known.

**{¶ 8}** "In short, Tenable's failure to submit the employee handbook prevents judicial review of the discharge on the question of whether the written work rules clearly define the prohibited conduct. On that basis, this magistrate must conclude that Tenable's failure to submit the employee handbook was fatal to its voluntary abandonment claim."

**{¶ 9}** The court of appeals adopted the magistrate's report, also suggesting that, with or without the handbook, the violations were too insignificant to merit foreclosure of temporary total disability compensation. Indeed, the opinion described the issue as "whether these various infractions were so serious as to constitute a voluntary abandonment of employment." The court answered that question in the negative and granted the writ.

**{¶ 10}** Tenable now appeals to this court as of right.

**{¶ 11}** Voluntary departure from employment can bar temporary total disability compensation. *State ex rel. Rockwell Internatl. v. Indus. Comm.* (1988), 40 Ohio St.3d 44, 45-46, 531 N.E.2d 678. Employment discharge can be considered a voluntary abandonment if it originates from behavior that the claimant willingly undertook. *State ex rel. Watts v. Schottenstein Stores Corp. v. Indus. Comm.* (1993), 68 Ohio St.3d 118, 121, 623 N.E.2d 1202. This rule arises from "the principle that an individual 'may be presumed to tacitly accept the consequences of his voluntary acts.' " *State ex rel. Valley Interior Sys., Inc. v. Indus. Comm.*, 118 Ohio St.3d 418, 2008-Ohio-2703, 889 N.E.2d 993, ¶ 9,

quoting *State ex rel. Ashcraft v. Indus. Comm.* (1987), 34 Ohio St.3d 42, 44, 517 N.E.2d 533. But the consequence must be "one of which the claimant was, or should have been, aware." *Valley Interior*, id.

{¶ 12} *Louisiana-Pacific* incorporates these tenets. To be considered a voluntary abandonment under *Louisiana-Pacific*, a firing must arise from an employee's "violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee." 72 Ohio St.3d at 403, 650 N.E.2d 469.

{¶ 13} *Louisiana-Pacific* first demands that the rule must be in writing. We elaborated on this requirement in *State ex rel. McKnabb v. Indus. Comm.* (2001), 92 Ohio St.3d 559, 561, 752 N.E.2d 254:

{¶ 14} "Written rules do more than just define prohibited conduct. They set forth a standard of enforcement as well. Verbal rules can be selectively enforced. Written policies help prevent arbitrary sanctions and are particularly important when dealing with employment terminations that may block eligibility for certain benefits."

{¶ 15} Employers typically incorporate their work rules into a written manual or handbook that is distributed to all employees. No one disputes that Tenable had a handbook. To the contrary, Galligan acknowledged that she was given one when hired. The handbook, however, is not in the record, and its absence gives rise to the issue now before us: does an employer's failure to enter its employee handbook into the record automatically defeat a claim of voluntary abandonment?

{¶ 16} The key term here is *automatically*. Because the commission has exclusive authority to weigh and evaluate the evidence, a per se rule is inappropriate. In *State ex rel. Burley v. Coil Packing, Inc.* (1987), 31 Ohio St.3d 18, 31 OBR 70, 508 N.E.2d 936, the seminal case on the commission's

evidentiary authority, we were asked to review an evidentiary precept known as the "*Anderson* doctrine," first announced in *State ex rel. Anderson v. Indus. Comm.* (1980), 62 Ohio St.2d 166, 16 O.O.3d 199, 404 N.E.2d 153. *Anderson* held that when considering the extent of disability in claims having both physical and psychological conditions, the commission was precluded from relying on medical reports that did not evaluate the combined effects of all allowed conditions.

{¶ 17} While well-intentioned, *Anderson* had the unfortunate effect of automatically disqualifying innumerable relevant medical reports from commission consideration. In overturning that decision in *Burley,* we wrote:

{¶ 18} "To begin with, the *Anderson* decision effectively prevents the commission from ever considering the weight and credibility of any evidence which does not comport with the requisites of *Anderson*. This rule applies without regard to the relevancy * * * which a particular medical report may have toward one of the claimant's impairments. Not only does this rule deny the commission the benefit of considering what could be some of the most persuasive and credible evidence before it as to one aspect of the claimant's impairments, but it also dissuades the parties from tendering all the relevant evidence in the matter." Id., 31 Ohio St.3d at 20, 31 OBR 70, 508 N.E.2d 936.

{¶ 19} A per se rule foreclosing voluntary abandonment as a defense when the employee handbook is not in the record would have the same effect. It would deprive the commission of the ability to consider any of the other evidence presented in situations where the handbook is absent, regardless of the relevancy of the other evidence that may be in the record.

{¶ 20} In this case, in lieu of the employee handbook, Tenable submitted Galligan's disciplinary file into evidence. This evidence establishes that Galligan was on written notice from a prior "Employee Consultation" sheet that sleeping at her security post — the offense for which she was eventually fired — was a

violation of company policy. This documentation satisfies *Louisiana-Pacific's* requirements that the prohibited conduct be both clearly defined and known to Galligan.

{¶ 21} *Louisiana-Pacific's* remaining requirement is that the offense was one that the employer had previously identified as dischargeable. 72 Ohio St.3d at 403, 650 N.E.2d 469. It is not known whether sleeping on duty, in isolation, was a dischargeable offense because the employee handbook is not in the record. Under these facts, however, that absence is not dispositive. Galligan's disciplinary write-up on November 9, 2006, specifically stated that *any* further violation of *any* work rule would result in dismissal. Galligan then was effectively on notice that if she was caught sleeping at her post again, she would be fired.

{¶ 22} The commission did not abuse its discretion in finding that Galligan's discharge constituted a voluntary abandonment of her job. The judgment of the court of appeals is hereby reversed.

Judgment reversed.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Gregg A. Austin, for appellee.

Calfee, Halter & Griswold, L.L.P., William L. S. Ross, and William B. McKinley, for appellant.

_____