[Cite as *State ex rel. Hobbs v. Indus. Comm.*, 2023-Ohio-1759.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Jasper Hobbs, Jr., | : | |
| Relator, | : | |
| | : | No. 22AP-308 |
| v. | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on May 25, 2023

**On brief:** *Jurus, Workman, and Muldoon*, and *Michael J. Muldoon*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *David M. Canale*, for respondent Industrial Commission of Ohio.

**On brief:** *Kegler, Brown, Hill & Ritter, David M. McCarty, Danielle M. Crane*, and *Humphrey Kweminyi*, for respondent Honda Development & Manufacturing of America, LLC.

IN MANDAMUS

EDELSTEIN, J.

{¶ 1} Relator, Jasper Hobbs, Jr., brings this original action asking this court to issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to increase his permanent partial disability ("PPD") award. For the foregoing reasons, we adopt the magistrate's decision and deny Mr. Hobbs's request for a writ of mandamus.

**I. FACTUAL AND PROCEDURAL OVERVIEW**

{¶ 2}   In January 1990, Mr. Hobbs sustained a workplace injury during the course of and in connection with his employment for respondent Honda Development & Manufacturing of America, LLC ("Honda"), a self-insuring employer.  In 2004, Mr. Hobbs filed an initial application for PPD compensation. Later that year, Mr. Hobbs's workers' compensation claim was allowed for "right carpal tunnel syndrome" and he was granted a PPD award at 6 percent.  In 2011, following a hearing on Mr. Hobbs's first application for increase, the commission ordered Mr. Hobbs's PPD award be increased to 8 percent.

{¶ 3}   Mr. Hobbs filed a second application for increase with the Ohio Bureau of Workers' Compensation ("bureau") in 2021. On July 26, 2021, based on the opinion from Bienvenido D. Ortega, M.D., an independent medical examiner, the bureau issued a tentative order increasing Mr. Hobbs's PPD award to 12 percent.  Honda objected to that order, so the matter was heard by a district hearing officer ("DHO") of the commission in September 2021.  On October 5, 2021, the DHO vacated the bureau's tentative order increasing Mr. Hobbs's PPD award from 8 percent to 12 percent, on the grounds that his application for increase was not supported by "substantial evidence of new and changed circumstances."

{¶ 4}   Mr. Hobbs requested reconsideration of that order, which was heard by a staff hearing officer ("SHO") of the commission in December 2021. The SHO affirmed the DHO's order vacating the 4 percent PPD award increase on December 25, 2021. Specifically, the SHO found the evidence showed Mr. Hobbs's last documented medical treatment date for his right carpal tunnel syndrome claim was on July 2, 2002, and there was no evidence his condition became disabling (or otherwise flared-up) since that appointment.  The SHO also noted that Mr. Hobbs's workers' compensation claim had not been amended to include any additional medical conditions.

{¶ 5}   On May 31, 2022, Mr. Hobbs filed a complaint for a writ of mandamus in this court against the commission and Honda.  Specifically, Mr. Hobbs requests that we find he is entitled to an additional 4 percent increase in his PPD award—i.e., a 12 percent PPD award in total—based on Dr. Ortega's 2021 report.

{¶ 6}   Pursuant to Loc.R. 13(M) of this court and Civ.R. 53, we referred this matter to a magistrate of this court on June 1, 2022.  Respondents filed their answers to Mr.

Hobbs's complaint, and all parties filed briefs and stipulated evidence in accordance with the assigned magistrate's briefing schedule.

{¶ 7} On February 1, 2023, the assigned magistrate issued a decision with findings of fact and conclusions of law, which is appended hereto. In that decision, the magistrate determined the commission did not abuse its discretion by finding Mr. Hobbs's application for increase in percentage of PPD was not supported by substantial evidence of new and changed circumstances. Thus, the magistrate recommended this court deny the requested writ of mandamus.

{¶ 8} Mr. Hobbs has not filed objections to the magistrate's decision. "If no timely objections are filed, the court may adopt a magistrate's decision unless the court determines that there is an error of law or other defect evident on the face of the decision." Civ.R. 53(D)(4)(c).

## II. ANALYSIS

{¶ 9} Our review of the magistrate's decision reveals no error of law or other defect. We agree with the magistrate's conclusion that the commission did not abuse its discretion by finding Mr. Hobbs's application for increase in percentage of PPD was not supported by substantial evidence of new and changed circumstances.

{¶ 10} R.C. 4123.57(A) requires an application for an increase in PPD to be "supported by substantial evidence of new and changed circumstances developing since the time of the hearing on the original or last determination." *See also* Ohio Adm.Code 4123-3-15(B)(1). We acknowledge the possibility that, when Mr. Hobbs applied for another PPD award increase in 2021, his condition had worsened since his 2010 application for increase. But, based on the record before us, we cannot say the commission abused its discretion by determining there was not substantial evidence of new and changed circumstances.

{¶ 11} Mr. Hobbs thus failed to meet his burden in mandamus—to show that he has a clear right to the relief requested and that the commission has a clear duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967), paragraph nine of the syllabus.

## III. CONCLUSION

{¶ 12} Having conducted an examination of the magistrate's decision and an independent review of the record, pursuant to Civ.R. 53(D)(4)(d), we find the magistrate

properly applied the relevant law to the salient facts when it reached the conclusion that Mr. Hobbs's request for a writ of mandamus should be denied. Finding no error of law or other defect on the face of the magistrate's decision, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. Accordingly, we deny Mr. Hobbs's request for a writ of mandamus.

*Writ of mandamus denied.*

JAMISON and LELAND, JJ., concur.

# APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| State ex rel. Jasper Hobbs, Jr., | : | | |
| Relator, | : | No. 22AP-308 | |
| v. | : | (REGULAR CALENDAR) | |
| Industrial Commission of Ohio et al., | : | | |
| Respondents. | : | | |

## M A G I S T R A T E ' S   D E C I S I O N

Rendered on February 1, 2023

*JURUS, WORKMAN AND MULDOON*, and *Michael J. Muldoon*, for relator.

*Dave Yost,* Attorney General, and *David M. Canale*, for respondent Industrial Commission of Ohio.

*Kegler, Brown, Hill & Ritter*, *David M. McCarty*, *Danielle M. Crane*, for respondent Honda Development & Manufacturing of America, LLC.

IN MANDAMUS

{¶ 13} Relator, Jasper Hobbs, Jr., seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to increase his permanent partial disability ("PPD") award.

Findings of Fact:

{¶ 14} 1. Relator suffered an injury on January 29, 1990 while employed by respondent, Honda Development & Manufacturing of America, LLC ("Honda"), a self-insuring employer. (Stip. at 15.) Relator's workers' compensation claim was allowed for

"right carpal tunnel syndrome." (Stip. at 4.) Thereafter, relator was granted a PPD award at six percent. (Stip. at 4.)

{¶ 15} 2. Following his initial PPD award, relator filed an application for increase in percentage of PPD with the Bureau of Workers' Compensation ("bureau"). (Stip. at 4.)

{¶ 16} 3. Relator was examined on August 5, 2010 by Nancy Renneker, M.D. Dr. Renneker's report included a notation of relator's claim allowance, a history of the injury, and a summary of relator's present complaints. Dr. Renneker found the following with regard to relator's active right wrist range of motion: "extension 30 degrees, flexion 40 degrees, radial deviation 5 degrees, and ulnar deviation 15 degrees." (Supp. Stip. at 38.) Dr. Renneker opined that relator had a 21 percent whole person impairment due to:

> (1) residual median nerve impairment at right wrist due to: (a) a total sensor loss volar tips of right thumb, index, and right middle finger represents 20% right upper extremity impairment and (b) 3+/5 right thumb opposition strength represents an additional 5% right upper extremity impairment, for a combined total 24% right upper extremity and (2) decreased active right wrist range of motion represents an additional 14% right upper extremity impairment, for a combined total 35% right upper extremity impairment, or 21% whole person impairment for this work related injury of 1-29-1990.

(Supp. Stip. at 38.)

{¶ 17} 4. In an order issued by a commission district hearing officer ("DHO") on March 30, 2011, relator was granted an additional PPD award of two percent, resulting in a total award of eight percent. The DHO stated the findings in the March 30, 2011 order were based on "the reports of Drs. Singer, Sadaka and Renneker." (Stip. at 4.)

{¶ 18} 5. On March 10, 2021, relator filed another application for increase in percentage of PPD with the bureau. (Stip. at 6.)

{¶ 19} 6. Relator was examined on March 23, 2021 by Dr. Daniel Reed, a chiropractic physician. In a report dated March 24, 2021, Dr. Reed noted relator's allowed condition and described the results of the examination of relator's right wrist. Dr. Reed found relator had swelling on the dorsal aspect of the wrist in addition to pain on palpation over the medial and lateral aspect of the wrist. Relator had decreased ranges of motion and demonstrated decreased grip strength. Specifically, Dr. Reed found the right wrist ranges of motion to be as follows:

> Wrist extension 5 degrees which equals 9% U.E.I based upon table 16-28 page 467
>
> Wrist Flexion 10 degrees which equals 8% U.E.I based upon table 16-28 page 467
>
> Ulnar Deviation 5 degrees which equal 4% U.E.I based upon table 16-31 page 469
>
> Radial Deviation 5 degrees which equal 3% U.E.I based upon table 16-31 page 469
>
> Total U.E.I impairment is equal to 24 U.E.I values added. 24 U.E.I is equal to 14% W.P.I[.]

(Stip. at 8.) Thus, Dr. Reed opined that relator had a 14 percent whole person impairment due to decreased wrist range of motion and 3 percent whole person impairment due to "ongoing pain," for a total whole person impairment of 17 percent. (Stip. at 9.)

{¶ 20} 7. Pursuant to an order from the bureau, relator was next examined by Bienvenido D. Ortega, M.D., an independent medical examiner, on July 15, 2021. Dr. Ortega's report included a notation of relator's claim allowance, a brief history of the injury, and a summary of relator's present complaints. Dr. Ortega reviewed relator's medical file, including the reports from Drs. Renneker and Reed. Relator was found to have "decreased pinprick sensation and widened two-point discrimination over the tips of the middle and ring fingers" in addition to weakness in his grip. (Stip. at 13.) Dr. Ortega opined that relator had a 4 percent increase in whole person impairment for a total whole person impairment of 12 percent. (Stip. at 13.)

{¶ 21} 8. Based on Dr. Ortega's report, on July 26, 2021, the bureau issued a tentative order granting relator an increase in the PPD award in the amount of four percent. (Stip. at 15.)

{¶ 22} 9. Following an objection by Honda, the matter was heard by a commission DHO on September 30, 2021. The DHO issued an order on October 5, 2021 vacating the bureau's tentative order because relator's application was not supported by substantial evidence of new and changed circumstances. (Stip. at 19-20.)

{¶ 23} 10. On December 25, 2021, a commission staff hearing officer ("SHO") issued an order affirming the DHO's October 5, 2021 order. In support of the decision, the SHO made the following findings:

> The Staff Hearing Officer finds from proof of record that the Injured Worker does not have a percentage of permanent

partial disability above that which was previously awarded in this claim which has been allowed for "right carpal tunnel syndrome[.]"

* * *

In today's claim, the Staff Hearing Officer finds that the Injured Worker's last medical treatment documented in the instant claim was on 07/02/2002 and there is otherwise no evidence of any flare-up since that time, that the allowed condition of "right carpal tunnel syndrome" became disabling during this nineteen-year period, or that the claim was amended to include an additional medical condition. As such, the Staff Hearing Officer finds that the instant request for an increase in permanent partial disability is not supported by "substantial evidence of new and changed circumstances" and, therefore, said request is properly denied.

(Stip. at 25-26.)

{¶ 24} 11. On May 31, 2022, relator filed his complaint in the instant mandamus action.

Discussion and Conclusions of Law:

{¶ 25} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, a relator must establish a clear legal right to the requested relief and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). Where the commission's determination is supported by some evidence, it has not abused its discretion and this court must uphold the decision. *State ex rel. Seibert v. Richard Cyr, Inc.*, 157 Ohio St.3d 266, 2019-Ohio-3341, ¶ 44, citing *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373, 376 (1996). The commission is "exclusively responsible for assessing the weight and credibility of evidence." *State ex rel. George v. Indus. Comm.*, 130 Ohio St.3d 405, 2011-Ohio-6036, ¶ 11, citing *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18 (1987). Where the commission's decision is supported by some evidence, the presence of contrary evidence in the record is immaterial. *State ex rel. West. v. Indus. Comm.*, 74 Ohio St.3d 354, 356 (1996), citing *Burley*. However, the commission cannot rely on a medical opinion that is equivocal or internally inconsistent. *George* at ¶ 11. *See State ex rel. Lopez v. Indus. Comm.*, 69 Ohio St.3d 445, 449 (1994).

{¶ 26} This mandamus action presents the question of whether the commission erred in determining that relator's application for increase in percentage of PPD was not

supported by substantial evidence of new and changed circumstances. R.C. 4123.57(A) requires an application for an increase in PPD to be "supported by substantial evidence of new and changed circumstances developing since the time of the hearing on the original or last determination." *See* Ohio Adm.Code 4123-3-15(B)(1). Establishing new and changed circumstances entails demonstrating that "conditions have changed subsequent to the initial award," and not simply evidence which was "newly acquired." *State ex rel. Keith v. Indus. Comm.*, 62 Ohio St.3d 139, 141-42 (1991), citing *State ex rel. Bd. of Edn. v. Johnston*, 58 Ohio St.2d 132 (1979). *See also State ex rel. Knapp v. Indus. Comm.*, 134 Ohio St.3d 134, 2012-Ohio-5379, ¶ 18; *State ex rel. Casey v. Indus. Comm.*, 10th Dist. No. 20AP-247, 2022-Ohio-532, ¶ 19. In support of finding a lack of substantial evidence of new and changed circumstances, the DHO and SHO cited to the Supreme Court of Ohio's decision in *State ex rel. Ross v. Indus. Comm.*, 118 Ohio St.3d 73, 2008-Ohio-1739.

**{¶ 27}** In that case, Ross, the claimant, suffered an injury resulting in her missing minimal time from work and undergoing brief treatment. Nine days after the injury, Ross reported that her pain was " '98% better' " and stated she had no need for further physical therapy or analgesics. *Ross* at ¶ 1. There was no further record of treatment. Approximately two years later, Ross applied for a PPD award, but did not submit any medical evidence in support of her application. At the request of the bureau, Ross was examined by a physician, who found that Ross's condition had completely resolved and resulted in no permanent impairment. Relying on the physician's report, the bureau found no impairment and made no award; this determination was affirmed by the commission DHO on Ross's objection.

**{¶ 28}** Five months later, Ross applied for an increase in PPD based on a doctor's report, which noted that Ross had no treatment since immediately after her injury. The doctor found Ross had an eight percent impairment, but made no reference to an exacerbation of the injury or increase in symptoms since Ross's initial examination by the bureau's physician. At the request of the bureau, another doctor reviewed the medical file and assessed a five percent impairment. The bureau made a five percent PPD award, and a DHO affirmed the award. Upon reconsideration, a SHO vacated the prior determinations and found that no new and changed circumstances supported an increase based in part on the report of the first physician to examine Ross on her initial application for PPD.

{¶ 29} The Supreme Court of Ohio agreed with the SHO, noting that the only medical evidence before the commission on Ross's initial application for PPD indicated that her condition had resolved. As a result, Ross was "required to demonstrate, in her second application, that something had changed--e.g., an exacerbation of her condition or the allowance of a new condition." *Ross* at ¶ 18. Ross, however, merely submitted the report of a doctor who disagreed with the opinion of the first physician. This subsequent doctor's report did not "indicate that Ross suffered a flare-up[1] or even underwent renewed treatment, and Ross herself makes no such allegation." *Id.* Nothing in the record indicated that Ross's medical status was any different from when she was initially examined. Because the record only reflected a "disagreement between two examiners," Ross failed to show a new and changed circumstance. *Id.* Finally, the court rejected Ross's contention that the SHO erred by relying on the initial physician's report, stating that "[s]ometimes new and changed circumstances cannot be determined without knowing what the old circumstances were." *Id.* at ¶ 19.

{¶ 30} Prior to *Ross*, in *State ex rel. Solomon v. Indus. Comm.*, 42 Ohio St.2d 70 (1975), the Supreme Court of Ohio considered the meaning of "substantial evidence of new and changed circumstances" in the context of an application for increase in percentage of PPD. The claimant, who according to the medical records was experiencing a " 'continuing painful condition,' " submitted two medical reports with his initial application for PPD: one estimating 25 percent PPD and a second estimating 10 to 15 percent PPD. *Solomon* at 71. The commission awarded the claimant PPD in the amount of 6 percent. Years later, the claimant applied for an increase in percentage of PPD, submitting a physician's report estimating 15 percent PPD. A second physician appointed by the commission found the same percentage. The commission ultimately denied the application because there was not substantial evidence of new and changed circumstances.

{¶ 31} The Supreme Court of Ohio found the commission did not abuse its discretion in determining there was a lack of substantial new and changed evidence since the last determination. Because the "medical disability opinions subsequent to the original

---

[1] The Supreme Court of Ohio has described a "flare-up" as a "temporary worsening" of a claimant's condition. *State ex rel. Barnes v. Indus. Comm.*, 114 Ohio St.3d 444, 2007-Ohio-4557, ¶ 15. *See State ex rel. Bing v. Indus. Comm.*, 61 Ohio St.3d 424, 428 (1991). *See also State ex rel. Americare Corp. v. Logan*, 10th Dist. No. 02AP-556, 2003-Ohio-627, ¶ 15 (defining a "flare-up" as "increased pain * * * in lay terms").

six percent rating of the commission, while higher than the agreed six percent rating, are not higher than the percentages which supported that six percent rating." *Solomon* at 71-72. Furthermore, the fact that the relator was awarded temporary total disability benefits after the initial PPD award was not "persuasive in itself of 'substantial evidence of new and changed circumstances' " under the statute.[2] *Id.* at 72.

{¶ 32} Next, in *State ex rel. Gen. Motors Corp., Chevrolet Motor Div. v. Indus. Comm.*, 54 Ohio St.2d 333, 334 (1978), the Supreme Court of Ohio rejected an employer's argument that a "medical opinion which differs only on the basis of increase in numerical percentage from that previously awarded is not 'substantial evidence of new and changed circumstances' " and that "progression or degeneration in physical condition must be evidenced by demonstrable medical or clinical findings beyond subjective opinions as to numerical percentages of disability." *Id.* at 334. The court held that "a medical report or reports concluding percentage increases, *beyond percentages previously reported* in connection with the original claim, is not an improper consideration" for finding new and changed circumstances under the statute. (Emphasis added.) *Id.* at 335.

{¶ 33} This court has also examined the requirement of substantial evidence of new and changed circumstances to support an increase in percentage of PPD. *State ex rel. Rocktenn Co. v. Long*, 10th Dist. No. 12AP-862, 2013-Ohio-5296, ¶ 7. In that case, the court rejected the employer's argument that the claimant's "subjective complaint of 'chronic pain' cannot justify the grant of an increase in permanent partial disability, absent objective medical or clinical findings of increased impairment." *Rocktenn* at ¶ 7. Relying in part on *Gen. Motors*, the court found that a doctor's report which added "chronic pain" to its calculation of impairment constituted substantial evidence of new and changed circumstances even though the doctor did not indicate when such chronic pain began. *Id.* at ¶ 8.

{¶ 34} Relator argues the commission abused its discretion because the uncontroverted medical evidence indicated relator's PPD had increased. However, as the above cases make clear, this is not the pertinent consideration when attempting to demonstrate substantial evidence of new and changed circumstances. Although a medical

---

[2] The relevant statutory section, currently R.C. 4123.57(A), was previously listed under R.C. 4123.57(B) at the time of the court's decision in *Solomon*.

report indicating an increase in the numerical percentage of disability beyond percentages previously reported can constitute evidence of new and changed circumstances under *Gen. Motors*, the record in this case presents a different set of circumstances.

{¶ 35} Here, the medical reports of Drs. Reed and Ortega, which were filed in conjunction with relator's latest application for increase in percentage of PPD, indicated that relator had a 17 and 12 percent impairment respectively. These percentages, however, are not greater than the 21 percent impairment found by Dr. Renneker in conjunction with relator's first application for increase in percentage of PPD. While relator's new evidence may demonstrate a disagreement among current and prior medical opinions as to the percentage of PPD, it was not an abuse of discretion for the commission to conclude that there was not substantial evidence of new and changed circumstances on this basis. *Solomon* at 72; *Gen. Motors* at 335; *Ross* at ¶ 8.

{¶ 36} Relator also points to comments in Drs. Reed and Ortega's reports in arguing there was substantial evidence of new and changed circumstances. Specifically, Dr. Reed stated that relator indicated he "had to do repetitive job duties which included operating tools, lifting objects, and his right hand frequently [sic]. Due to this he developed numbness into his hand. He notes that he continues to have ongoing issues at this time." (Stip. at 8.) Dr. Ortega indicated that relator "had 'successful surgery for right carpal tunnel syndrome.' However, some symptoms have returned, namely 'pins and needles' of the right middle and ring fingers." (Stip. at 12.)

{¶ 37} In comparison, Dr. Renneker noted that "due to repetitive use of his right (dominant) wrist and hands to pound parts in place, operate impact tools, and lifting on jobs," relator had "increasing numbness/tingling throughout right wrist and hand, weakness throughout right wrist and hand i.e. decreased right grip strength." (Stip. at 37.) Dr. Renneker stated that relator's complaints at the time of examination included:

> (1) constant right wrist stiffness with Jasper Hobbs reporting that he is unable to push with his right wrist in part due to this stiffness[;] (2) constant waking and nocturnal right hand numbness/paresthesia[3] and Jasper Hobbs reports that with any repetitious use of his right wrist and hand that he will note radiation of this numbness/paresthesia extending from volar

[3] Paresthesia is defined as: "[a]n abnormal or unpleasant sensation that results from injury to one or more nerves. It is often described by patients as numbness and tingling, or as a prickly, stinging, or burning feeling." *Taber's Cyclopedic Medical Dictionary* 1761-1762 (23d Ed.2017).

aspect of right thumb up right arm to right shoulder[;] (3) decreased right hand dexterity due to numbness in tips of fingers with Jasper Hobbs reporting that he has difficulty buttoning small buttons with his right hand. Jasper Hobbs, who is a right hand dominant individual, reports that his handwriting is limited to signature only[;] and (4) weakness throughout right wrist and hand including decreased right grip strength with Jasper Hobbs reporting that at times he drops tools held in his right hand. Jasper Hobbs needs to use a gripper device to open jars [sic] lids and 2 liter twist top soda bottles with his right hand. Jasper Hobbs reports that he no longer does his upper body weight lifting routine due in part to weakness throughout right wrist and hand. Jasper Hobbs reports that his daughter must assist him with removing his neck chain with Jasper Hobbs reporting that he is unable to manage jewelry clasps with his right hand. Jasper Hobbs reports that he does not remove this chain to shower as he is unable to manage the clasp.

(Stip. at 37-38.)

{¶ 38} Thus, many of the same issues to which relator points in the 2021 reports of Drs. Reed and Ortega were also noted in Dr. Renneker's 2010 report. As noted by the commission in the SHO's order, the record does not reflect that relator underwent any medical treatment since 2002, relator's condition became disabling following relator's last treatment, or the claim was amended to include an additional medical condition. The commission is the sole evaluator of evidentiary weight and witness credibility. *State ex rel. Welsh Ents. v. Indus. Comm.*, 10th Dist. No. 19AP-127, 2020-Ohio-2801, ¶ 27; *State ex rel. Galligan v. Indus. Comm.*, 124 Ohio St.3d 233, 2010-Ohio-3, ¶ 16; *Solomon* at 72. Although it may have been possible to conclude that relator's condition had worsened since the last application for increase in percentage of PPD based on the comments in Drs. Reed and Ortega's reports, such comments considered together with the remainder of the record fail to demonstrate the commission abused its discretion by determining there was not substantial evidence of new and changed circumstances. *Compare State ex rel. Grimm v. Indus. Comm.*, 10th Dist. No. 07AP-761, 2008-Ohio-1800, ¶ 16 (finding commission abused its discretion and issuing writ where commission found zero percent PPD increase although all evidence before the commission on the application for an increase in PPD indicated impairment based solely on the new conditions).

{¶ **39**} Relator also asserts that he "testified that his medical condition was getting worse because of the heavy repetitive work that is required as a factory worker at Honda." (Relator's Brief at 7.) However, relator's testimony does not appear in the record presented to the court in this case, either in the form of a transcript or as noted in the DHO or SHO orders. *See State ex rel. Wiley v. Whirlpool Corp.*, 10th Dist. No. 02AP-340, 2002-Ohio-6558, ¶ 10 (finding relator's argument that commission abused its discretion suffered because it was based in part on testimony not in the record). As a result, relator's bare assertion is insufficient to demonstrate the commission abused its discretion.

{¶ **40**} In sum, relator has not demonstrated the commission abused its discretion by finding relator's application for increase in percentage of PPD was not supported by substantial evidence of new and changed circumstances. Accordingly, it is the decision and recommendation of the magistrate that relator's request for a writ of mandamus be denied.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).