[Cite as *State ex rel. Rocktenn Co. v. Indus. Comm.*, 2013-Ohio-5296.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Rocktenn Company, f.k.a. Stone Container Corp., | : | |
| | : | |
| Relator, | : | |
| | : | No. 12AP-862 |
| v. | | |
| | : | (REGULAR CALENDAR) |
| Edward A. Long, Sr. and Industrial Commission of Ohio, | : | |
| | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on December 3, 2013

*Scott, Scriven & Wahoff, LLP,* Timothy E. Cowans and C. Bradley Howenstein, for relator.

*Richard F. Brian,* for respondent Edward A. Long, Sr.

*Michael DeWine*, Attorney General, and *LaTawnda N. Moore,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

DORRIAN, J.

{¶ 1} Relator, Rocktenn Company, f.k.a. Stone Container Corp., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding to respondent, Edward A. Long, Sr. ("claimant"), a one-percent increase in his percentage of permanent partial disability ("PPD") compensation pursuant to R.C. 4123.57. Relator asks us to order the commission to deny claimant's application for an increase in his PPD.

{¶ 2}   Pursuant to Civ.R. 53(D) and Loc. R.13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto.   The magistrate recommends that this court deny the request for a writ of mandamus.

{¶ 3}   Relator generally argues that, although the magistrate has set forth the applicable statute, R.C. 4123.57(A), and Ohio Adm.Code 4123-3-15(B), it does not apply the same to the facts of this case.   Relator sets forth the following three specific objections:

> The magistrate erred in concluding that Long's subjective complaint described as "chronic pain" by Dr. Iemma, absent reasonably demonstrable (i.e. objective) medical or clinical findings showing a worsening of his condition since the last hearing, constituted some evidence upon which the commission could rely to award a PPD increase.
>
> The magistrate erred in finding Dr. Iemma's report describing Long's subjective complaints as "chronic pain" constituted substantial evidence of new and changed circumstances since the last award.
>
> The magistrate erred in finding the 2011 report of Dr. Iemma was some evidence upon which the commission could rely where his report suggests he was unaware of Long's 2010 back injury and resulting herniated disk at L4-5 when he attributed Long's low back pain following his 2010 injury to a 1990 claim that had not required any treatment or mediation for the previous nine years.

{¶ 4}   The arguments raised in relator's objections are essentially the same as those raised before and addressed by the magistrate.

{¶ 5}   R.C. 4123.57(A) states in part:

> Except on application for reconsideration, review, or modification, which is filed within ten days after the date of receipt of the decision of the district hearing officer, in no instance shall [a PPD] award be modified unless it is found from medical or clinical findings that the condition of the claimant resulting from the injury has so progressed as to have increased the percentage of permanent partial disability. * * * No application for subsequent percentage determin- ations on the same claim for injury or occupational disease shall be accepted for review by the district hearing officer unless supported by substantial evidence of new and changed

circumstances developing since the time of the hearing on the original or last determination.

{¶ 6}    Ohio Adm.Code 4123-3-15(B) states:

(B) "Application for Determination of Percentage of Permanent Partial Disability or Increase of Permanent Partial Disability" pursuant to division (A) of section 4123.57 of the Revised Code in state fund and self-insured claims.

(1) * * * An application for an increase in permanent partial disability must be accompanied by substantial evidence of new and changed circumstances which have developed since the time of the hearing on the original or last determination.

{¶ 7}    While relator continues to argue in general that claimant's subjective complaint of "chronic pain" cannot justify the grant of an increase in permanent partial disability, absent objective medical or clinical findings of increased impairment, we reject this argument and find no merit for the reasons stated in the magistrate's decision.

{¶ 8}    Furthermore, for the reasons stated in the magistrate's decision, we reject relator's specific arguments that (1) claimant's complaint of chronic pain cannot constitute substantial evidence of new and changed circumstances because the opining physician failed to indicate when the "chronic pain" began, and (2) that Dr. Iemma's 2011 report cannot constitute some evidence upon which the commission could rely because the report indicates no awareness of claimant's 2010 back injury. We also reject relator's assertion that Dr. Sethi's report is the only report on which the commission could rely.

{¶ 9}    Upon review of the magistrate's decision, an independent review of the record, and due consideration of relator's objections, we find the magistrate has properly determined the pertinent facts and applied the appropriate law. We therefore overrule relator's three objections to the magistrate's decision and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein.

{¶ 10}   Accordingly, the requested writ of mandamus is hereby denied.

*Objections overruled; writ denied.*

SADLER and O'GRADY, JJ., concur.

————————————

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

State ex rel.
Rocktenn Company, f.k.a. Stone                  :
Container Corp.,

                                                :

            Relator,

                                                :           No.  12AP-862
v.

                                                :        (REGULAR CALENDAR)

Edward A. Long, Sr. and
Industrial Commission of Ohio,                  :

            Respondents.                        :

---

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on July 30, 2013

---

*Scott, Scriven & Wahoff, LLP,* Timothy E. Cowans and C. Bradley Howenstein, for relator.

*Richard F. Brian,* for respondent Edward A. Long, Sr.

*Michael DeWine*, Attorney General, and *LaTawnda N. Moore,* for respondent Industrial Commission of Ohio.

---

### IN MANDAMUS

{¶ 11} In this original action, relator, Rocktenn Company, f.k.a. Stone Container Corp. requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding to respondent, Edward A. Long, Sr. ("claimant"), a one percent increase in his percentage of permanent partial disability

("PPD") pursuant to R.C. 4123.57, and to enter an order denying his application for an increase in his percentage of PPD.

Findings of Fact:

{¶ 12} 1. On September 18, 1990, claimant injured his lower back while employed with relator, a self-insured employer under Ohio's workers' compensation laws. On that date, claimant slipped on a wet floor and fell. The industrial claim (No. L55731-22) is allowed for: "low back strain; herniated disc L5-S1, left."

{¶ 13} 2. Initially, in January 1992, claimant filed an application for the determination of his percentage of PPD. In October 1993, he was awarded eight percent PPD.

{¶ 14} 3. In April 1994, claimant filed an application for an increase in the percentage of his PPD. In May 1995, he was awarded a 5 percent increase for a total of 13 percent PPD.

{¶ 15} 4. In May 2001, claimant filed another application for an increase in his percentage of PPD. In February 2002, he was awarded a 2 percent increase for a total of 15 percent.

{¶ 16} 5. Earlier, in July 1992, claimant underwent a laminectomy and discectomy at L5-S1 on the left.

{¶ 17} 6. On an April 2000 C-9, relator approved surgery described as "lumbar laminectomy-discectomy L4-5 right." According to relator, it "paid for surgery for the L4-5 disc in 2000, even though no injury has ever been allowed at that level." (Relator's brief, at 4.) A medical condition is not implicitly allowed when a self-insured employer authorizes and pays for surgery performed to treat the condition. *State ex rel. Schrichten v. Indus. Comm.*, 90 Ohio St.3d 436 (2000), citing *State ex rel. Griffith v. Indus. Comm.*, 87 Ohio St.3d 154 (1999).

{¶ 18} 7. In April 2010, claimant moved that his 1990 claim be additionally allowed for "herniated disc L4-L5 and right sciatica" based upon an April 14, 2010 report from treating physician P.L. Soni, M.D.

{¶ 19} 8. Following a June 23, 2010 hearing, a district hearing officer ("DHO") issued an order disallowing the 1990 claim for L4-L5 disc herniation and dismissing the request for allowance of "right sciatica."

{¶ 20} 9. Claimant administratively appealed the DHO's order of June 23, 2010.

{¶ 21} 10. Following an August 12, 2010 hearing, a staff hearing officer ("SHO") issued an order affirming the DHO's order of June 23, 2010.

{¶ 22} 11. According to relator's brief filed in this action, claimant appealed the SHO's order of August 12, 2010 to the Tuscarawas County Court of Common Pleas where the appeal remains pending. (Relator's brief, at 6.)

{¶ 23} 12. In September 2010, claimant filed another workers' compensation claim (No. 10-846915) alleging that, on January 11, 2010, he injured his lower back while employed with another employer, Graphics Packaging. Treating physician Dr. Soni opined that the herniated discs at L4-5 and L5-S1 were substantially aggravated by the injury.

{¶ 24} 13. Following a March 14, 2011 hearing, an SHO disallowed claim number 10-846915 alleging a January 11, 2010 injury. According to relator, the SHO's claim disallowance was appealed to the Tuscarawas County Court of Common Pleas. (Relator's brief, at 5.)

{¶ 25} 14. On September 19, 2011, at claimant's own request, he was examined by chiropractor David M. Grunstein, D.C. Dr. Grunstein examined claimant for the 1990 claim and he describes the allowed conditions of that claim as "[l]ow back strain; [h]erniated disc L5-S1, left." Dr. Grunstein opined:

> **OPINION:** Based on the consultation and examination findings above stated and how these findings correlate with the A.M.A. Guides, it is my opinion that the above named presented in this office with a total whole person impairment of 36 percent whole person impairment, on the above stated date, for the above stated conditions.

(Emphasis sic.)

{¶ 26} 15. Submitting the report of Dr. Grunstein, claimant filed an application for an increase in his percentage of PPD in the 1990 claim.

{¶ 27} 16. On December 16, 2011, at the request of the Ohio Bureau of Workers' Compensation ("bureau"), claimant was examined by Joseph Iemma, M.D., who specializes in internal medicine. Dr. Iemma issued a two-page narrative report, stating:

CLAIM #: L55731-22

DATE OF INJURY: 9/18/1990

DATE OF EXAM: 12/16/2011

ALLOWED CONDITIONS:

[One] 847.3, Sprain, lumbar region.
[Two] 722.10, Lumbar disc displacement.

MEDICAL HISTORY: The claimant was working at his job. There was a clay "paper" wedged in. He bent over at his waist to pull out this clay paper wedge. He felt immediately pulling in his low back.

TREATMENT: He eventually became a patient of Dr. Soni, orthopedist. He had an MRI. He had operative repair. Unfortunately, one year later, he had another injury requiring another operative repair. He had 2 operations back to back. He had physical therapy postop both.

RESPONSE: Not good. Pain, spasm, tightness, and numbness somewhat in the left leg.

OLD RECORDS: I have reviewed the records of Dr. Cassiono, MD, Dr. Smith, DO, Dr. Grunstein, DC, Dr. Soni, MD, MRI of lumbosacral spine which shows positive disc displacement.

PRESENT COMPLAINTS: He initially had some relief, but now he has pain, spasm, and tightness in the low back. He has some left leg numbness.

PHYSICAL EXAMINATION:
There is no guarding. There is tenderness of the lumbosacral spine on the left and on the right. There is no atrophy. The motor sensation is +5/5 bilateral of lower extremities. There is decreased sharp-dull, vibratory, and light touch on the left leg. There is spinal radiculopathy. The reflexes are 2+ at the patella and 1+ at the Achilles. Station and gait are normal. Heel-to-toe is normal.

Using AMA Guidelines fifth edition for the lumbosacral spine, pages 384-388, section 15.4, table 15.3, he is a DRE lumbar category 3 because of signs of radiculopathy with

> decreased sensation which is a 13% W.P.I. He also has chronic pain, which is an additional 3% W.P.I.
>
> Percentage of impairment, based on the AMA Guidelines fifth edition revised, the total W.P.I. for this claimant is 16%. Please note that he had a previous 15%, therefore, today's final W.P.I. is 1%.

{¶ 28} 17.  On December 23, 2011, the bureau mailed a tentative order awarding an increase of 1 percent PPD for a total of 16 percent PPD.  The bureau's order was based upon the report of Dr. Iemma.

{¶ 29} 18.  Relator timely objected to the bureau's tentative order.

{¶ 30} 19. On January 29, 2012, at relator's request, Sushil M. Sethi, M.D., completed a file review of claimant's medical records in the 1990 claim.  In his four-page narrative report, Dr. Sethi opines in response to specific questions:

> **Answers to Specific Questions:**
>
> **[One] Does the claimant present with substantial evidence of new and distinct findings to change the consensus developing since June 2002, the time he was awarded 2% increase in impairment to a total of 15% permanent award.**
> **Is it felt that his rating should be increased?**
>
> Based on thorough review of the records it is my expert medical opinion that there are no objective physical findings, laboratory findings, or diagnostic findings to show any substantial evidence of new and changed circumstances to cause any further increase in impairment than the previous 15%. Today's estimate based on the review of the entire medical records and the measurements of the treating and the examining physicians the claimant continues to be DRE category 3 and as per 5th edition AMA guidelines reference page 384, table 15-3 the impairment is 10% of the whole person. The claimant does not have any new and distinct findings to warrant any further increase than the previous award of 15%.
>
> **[Two] What do you currently rate his percentage of permanent disability pursuant to the AMA guidelines?**

> Considering all of the measurements described by different evaluating physicians including the chiropractor Grunstein, Dr. Soni, Dr. Iemma, as well as the prior measurements of Dr. Smith and Dr. Wilde it is my expert medical opinion that the claimant continues to be DRE category 3 of the lumbar spine page 384, table 15-3 the impairment is 10%. I have performed a formal pain related evaluation and find no additional unnecessary [sic] for pain. It is reflected in my assessment of the injured part. There is no further increase in impairment due to today's evaluation over the previous award.

(Emphasis sic.)

{¶ 31} 20. Following a February 7, 2012 hearing, a DHO issued an order affirming the bureau's December 23, 2011 order. The DHO's order explains:

> The order of the Administrator issued 12/23/2011 is affirmed.
>
> The Application is granted. The District Hearing Officer finds from proof of record that the Injured Worker's percentage of permanent partial disability has increased and is now 16 percent, which is an increase of 1 percent, and Injured Worker is therefore entitled to an additional award of compensation for a period of 2 weeks.
>
> This order is based upon the report of Dr. Iemma.

{¶ 32} 21. Relator moved for reconsideration of the DHO's order of February 7, 2012.

{¶ 33} 22. Following an April 18, 2012 hearing, an SHO issued an order affirming the DHO's order of February 7, 2012. The SHO's order explains:

> The Staff Hearing Officer affirms the District Hearing Officer's order for the reason that it is supported by proof of record and is not contrary to law. Therefore the increased award of 16 percent, which is an increase of 1 percent, entitles the injured worker to an additional award of compensation for a period of 2 weeks.
>
> This decision is based upon the report of Dr. Iemma dated 12/16/2011.

{¶ 34} 23. On October 2, 2012, relator, Rocktenn Company, f.k.a. Stone Container Corp., filed this mandamus action.

Conclusions of Law:

{¶ 35} The main issue is whether the report of Dr. Iemma, upon which the commission exclusively relied, provides some evidence supporting the award of an increase in the percentage of PPD.

{¶ 36} Finding that the report of Dr. Iemma provides the some evidence supporting the award, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

{¶ 37} R.C. 4123.57 provides for partial disability compensation. R.C. 4123.57(A) states:

> (A) The district hearing officer, upon the application, shall determine the percentage of the employee's permanent disability, except as is subject to division (B) of this section, based upon that condition of the employee resulting from the injury or occupational disease and causing permanent impairment evidenced by medical or clinical findings reasonably demonstrable. * * * Except on application for reconsideration, review, or modification, which is filed within ten days after the date of receipt of the decision of the district hearing officer, in no instance shall the former award be modified unless it is found from medical or clinical findings that the condition of the claimant resulting from the injury has so progressed as to have increased the percentage of permanent partial disability. A staff hearing officer shall hear an application for reconsideration filed and the staff hearing officer's decision is final. An employee may file an application for a subsequent determination of the percentage of the employee's permanent disability. * * * No application for subsequent percentage determinations on the same claim for injury or occupational disease shall be accepted for review by the district hearing officer unless supported by substantial evidence of new and changed circumstances developing since the time of the hearing on the original or last determination.

> Supplementing the statute, Ohio Adm.Code 4123-3-15(B) provides:

> "Application for Determination of Percentage of Permanent Partial Disability or Increase of Permanent Partial Disability"

pursuant to division (A) of section 4123.57 of the Revised Code in state fund and self-insured claims.

(1) * * * An application for an increase in permanent partial disability must be accompanied by substantial evidence of new and changed circumstances which have developed since the time of the hearing on the original or last determination.

* * *

(7) Where the application is for an increase in the percentage of permanent partial disability, no sooner than sixty days from the date of mailing of the application to the employer and the employer's representative, the applicant shall either be examined, or the claim referred for review by a physician designated by the bureau. * * * The bureau physician shall file a report of such examination or review of the record, together with an evaluation of the degree of impairment, as part of the claim file. Either the employee or the employer may submit additional medical evidence following the examination by the bureau medical section * * *.

{¶ 38} In *State ex rel. Gen. Motors Corp., Chevrolet Motor Div. v. Indus. Comm.,* 54 Ohio St.2d 333, 335 (1978), it was held that medical reports concluding percentage increases beyond percentages previously reported in connection with the original claim are not an improper consideration under R.C. 4123.57 of "new and changed circumstances developing since the time of the hearing on the original or last determination."

{¶ 39} In *State ex rel. Core Molding Technologies v. Indus. Comm.,* 10th Dist. No. 03AP-443, 2004-Ohio-2639, this court had occasion to apply the *Gen. Motors* holding to a commission award of an increase in PPD that was under challenge there.

{¶ 40} In the *Core Molding* case, Kathy Yarger obtained a 1 percent PPD award on her initial application for a determination of her percentage of PPD. The 1 percent award was based upon the report of bureau doctor David C. Randolph, M.D., who examined Yarger in March 2002 and opined that her permanent impairment was 1 percent of the body as a whole.

{¶ 41} Thereafter, in May 2002, Yarger was examined at her own request by Nancy Renneker, M.D., who opined that Yarger had sustained an 11 percent whole person impairment due to the industrial injury.

{¶ 42} In June 2002, Yarger filed an application for an increase in her percentage of PPD.

{¶ 43} In September 2002, Dr. Cantor reviewed the reports of Drs. Renneker and Randolph. In his report, Dr. Cantor opined that Yarger had an 11 percent permanent whole person impairment based upon the findings contained in the reports of the two examining physicians.

{¶ 44} In September 2002, the bureau issued a tentative order finding an 11 percent PPD, an increase of 10 percent based upon Dr. Cantor's report. Core Molding timely objected to the tentative order.

{¶ 45} In November 2002, at her employer's request, Yarger was again examined by Dr. Randoph who issued a report that his "original impairment rating of 1% of the whole person remains unchanged." *Id.* at ¶ 22. He also criticized Dr. Renneker's report on grounds that it was allegedly based upon non-allowed conditions.

{¶ 46} Ultimately, following a January 2003 hearing, an SHO issued an order setting the percentage of PPD at 8 percent which is a 7 percent increase from the original award. The only explanation given in the order for the increase in the award is the statement "this order is based upon the reports of Drs. Cantor, Randolph and Renneker." *Id.* at ¶ 22.

{¶ 47} In *Core Molding*, this court found that, in her May 2002 report, Dr. Renneker found less range of motion in Yarger's right shoulder than previously had been found by Dr. Randolph in his March 2002 report:

> This constituted some evidence that the injured worker's shoulder had significantly less range of motion as of May 9, 2002, than it did on March 5, 2002, and that the allowed conditions were progressively worse at the time of the later examination.

*Id.* at ¶ 5.

{¶ 48} In *Core Molding*, this court, speaking through its magistrate states:

> [T]his court has had previous occasion to address the applicability of [*State ex rel. Noll v. Indus. Comm.,* 57 Ohio St.3d 303] to the commission's determination of permanent partial disability. In *State ex rel. Combs v. Indus. Comm.* (Aug. 16, 2001), Franklin App. No. 00AP-1145, this court, with one judge dissenting, stated:
>
> > The commission properly could indicate that it based its decision on the medical reports it noted in its order, as the commission evaluated the reports and the percentages of disability stated in them, and then used that information to arrive at a figure within the range of the reports. Moreover, in these circumstances, the commission is not required to explain exactly how it calculates an impairment rating.
> >
> > Here, the SHO's order of January 8, 2003 states reliance on the reports of Drs. Cantor, Randolph and Renneker in determining that claimant has an eight percent permanent partial disability. Drs. Renneker and Cantor rated claimant's permanent impairment at 11 percent, while Dr. Randolph rated the impairment at one percent.
> >
> > The commission's determination of eight percent is within the range of percentages of the reports relied upon. The commission was not required to explain how it arrived at the eight percent. In short, the commission's award of an eight percent permanent partial disability does not violate *Noll.*

*Id.* at ¶ 37-39.

{¶ 49} Here, the record contains the order of the DHO following a February 26, 2002 hearing that resulted in an award of a 2 percent increase in the percentage of PPD for a total of 15 percent. The order states that it "is based upon the report of Dr(s). Williams and Grunstein."

{¶ 50} The record contains the August 13, 2001 report of Perry Williams, M.D., upon which the DHO's order of February 26, 2002 presumably relies. In his one-page narrative report, Dr. Williams opines:

> In my opinion, this individual falls into lumbosacral category III equating to a 10% whole person impairment.

{¶ 51} Comparing the report of Dr. Williams to the report of Dr. Iemma at issue here, we find that Dr. Iemma also placed claimant at "DRE lumbar category 3" but, unlike Dr. Williams, added impairment due to "chronic pain."  Again, Dr. Iemma states:

> Using AMA Guidelines fifth edition for the lumbosacral spine, pages 384-388, section 15.4, table 15.3, he is a DRE lumbar category 3 because of signs of radiculopathy with decreased sensation which is a 13% W.P.I. He also has chronic pain, which is an additional 3% W.P.I.
>
> Percentage of impairment, based on the AMA Guidelines fifth edition revised, the total W.P.I. for this claimant is 16%. Please note that he had a previous 15%, therefore, today's final W.P.I. is 1%.

{¶ 52} Thus, the comparison shows that Dr. Iemma reached the 16 percent impairment rating by adding "chronic pain."

{¶ 53} Relator challenges Dr. Iemma's "chronic pain" finding on several grounds. First, relator contends that "chronic pain" is a subjective finding, not an objective finding and thus pain cannot be used by the physician in his determination of impairment.  The magistrate disagrees with relator's contention.

{¶ 54} It is well settled that pain is a factor to be considered in determining medical impairment.  *State ex rel. Paraskevopoulos v. Indus. Comm.,* 83 Ohio St.3d 189 (1998); *State ex rel. Unger v. Indus. Comm.,* 70 Ohio St.3d 672 (1994); *State ex rel. Bray v. Indus. Comm.,* 10th Dist. No. 02AP-939, 2003-Ohio-2885.

{¶ 55} Secondly, relator argues that claimant suffers pain due to the disallowed herniated disc at L4-5, and thus Dr. Iemma was required to specify in his report that the "source" of the chronic pain is the allowed herniated disc L5-S1 and not the disallowed herniated disc at L4-5.  (Relator's brief, at 14.)  According to relator, it was an abuse of discretion for the commission to "infer" from the report that the "chronic pain" is due to the 1990 injury. (Relator's brief, at 14.)  It can be observed that Dr. Iemma's report does not refer to the disallowed condition nor does it specifically indicate that the "chronic pain" is not due to the disallowed herniated disc at L4-5.  Nevertheless, the magistrate disagrees with relator's second argument.

{¶ 56} In the heading of his report, Dr. Iemma correctly lists the claim number and the date of injury. He then lists the allowed conditions of the claim which relator does not dispute here. Given that scenario, it is permissible to infer that Dr. Iemma's "chronic pain" finding is related solely to the allowed conditions of the claim. That Dr. Iemma does not mention the disallowed condition was a factor to be considered by the commission when it weighed the medical reports before it. Presumably, in the exercise of its fact finding discretion, the commission was satisfied that Dr. Iemma's impairment rating was confined to the allowed conditions of the claim.

{¶ 57} Moreover, relator's second argument suggests incorrectly that claimant has the burden to prove that his impairment is not due to a disallowed or non-allowed condition. Relator does not have such burden. *State ex rel. Ignatious v. Indus. Comm.*, 99 Ohio St.3d 285, 2003-Ohio-3627.

{¶ 58} Based upon the above analysis, the magistrate concludes that the report of Dr. Iemma provides some evidence supporting the award of an increase in the percentage of PPD.

{¶ 59} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).