[Cite as *State ex rel. McCartney v. Simco Mgt., Inc.*, 2025-Ohio-753.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. David McCartney, | : | |
| Relator, | : | No. 24AP-13 |
| v. | : | (REGULAR CALENDAR) |
| Simco Management, Inc. et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on March 6, 2025

**On brief:** *Schiavoni, Schiavoni, Bush & Muldowney*, and *Shawn R. Muldowney*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *Daniel G. Schumick*, for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

JAMISON, P.J.

{¶ 1} Relator, David McCartney, has filed a mandamus action against respondents, Industrial Commission of Ohio ("commission") and Simco Management, Inc. ("Simco"). McCartney requests this court issue a writ of mandamus ordering the commission to vacate its October 28, 2023 order denying McCartney permanent total disability ("PTD") compensation and to issue a new order granting that compensation. Alternatively, McCartney requests this court issue a writ of mandamus ordering the commission to vacate the October 28, 2023 order and to conduct further proceedings on McCartney's February 28, 2023 application for PTD compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this court referred this matter to a magistrate. The magistrate issued the appended

decision, including findings of fact and conclusions of law, recommending that this court deny the requested writ of mandamus. The magistrate determined that McCartney failed to show that a commission staff hearing officer ("SHO") erred in concluding that McCartney did not demonstrate new and changed circumstances that would justify the consideration of his February 28, 2023 application for PTD compensation. Pursuant to Civ.R. 53, McCartney objected to the magistrate's decision, asserting that "[t]he Magistrate erred in finding that the Ohio Industrial Commission correctly found there was no evidence of new and changed circumstances since the Relator was last denied permanent total disability on August [20], 2016." (Relator's Obj. to the Mag. Decision at 4.) We must independently review the magistrate's decision to ascertain if "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d).

{¶ 3} To be entitled to a writ of mandamus, a relator must show by clear and convincing evidence that he has a clear legal right to the requested relief, the commission has a clear legal duty to provide that relief, and there is no adequate remedy in the ordinary course of law. *State ex rel. Ohio State Univ. v. Pratt*, 2022-Ohio-4111, ¶ 11. A court may issue a writ of mandamus when there is a legal basis to compel the commission to perform its duties under the law or when the commission has abused its discretion in carrying out its duties. *State ex rel. Prinkey v. Emerine's Towing, Inc.*, 2024-Ohio-5713, ¶ 15. Additionally, " '[a] mandatory writ may issue against the Industrial Commission if the commission has incorrectly interpreted Ohio law.' " *State ex rel. Cassens Corp. v. Indus. Comm.*, 2024-Ohio-526, ¶ 10, quoting *State ex rel. Gassmann v. Indus. Comm.*, 41 Ohio St.2d 64, 65 (1975).

{¶ 4} As the magistrate recounts in his findings of fact, McCartney was injured in the course of and arising out of his employment with Simco. The commission allowed McCartney's claim for multiple conditions, including dysthymic disorder, and awarded him permanent partial disability compensation. McCartney then applied for PTD compensation, which the commission denied in a decision issued February 15, 2008. In that decision, the SHO determined that McCartney retained the ability to perform sedentary and light work and, consequently, he did not establish by a preponderance of the evidence that he was unable to engage in sustained remunerative employment. The commission denied McCartney PTD compensation for a second time in its August 20, 2016

decision. There, the SHO found that McCartney had voluntarily abandoned the workforce when he left the workforce for reasons other than the allowances in his claim.

{¶ 5} This action concerns McCartney's third application for PTD compensation, filed February 28, 2023. After the denial of McCartney's second application and prior to the submittal of his third application, the General Assembly amended R.C. 4123.58 to add a division G, which states:

> If the industrial commission has adjudicated a claimant's application for compensation payable under this section for permanent total disability and issued a final order denying compensation for that application, the claimant shall present evidence of new and changed circumstances before the industrial commission may consider a subsequent application filed by the claimant for compensation under this section for the same injury or occupational disease identified in the previous application.

R.C. 4123.58(G).

{¶ 6} Thus, the SHO reviewing McCartney's third PTD application focused on whether McCartney demonstrated any new and changed circumstances as required under R.C. 4123.58(G). The SHO relied on *State ex rel. Akron Paint & Varnish, Inc. v. Gullotta*, 2012-Ohio-542, to conclude that McCartney did not meet his burden.

{¶ 7} In *Akron Paint & Varnish*, the commission had previously denied a claimant temporary total disability ("TTD") compensation because the claimant had refused his employer's offer of a light-duty job. *Id.* at ¶ 6. The claimant, however, filed a new request for TTD compensation when his claim was allowed for an additional medical condition. *Id.* at ¶ 7. The commission exercised its continuing jurisdiction over the new request because it found evidence of new and changed circumstances based on the claimant's worsening medical condition. *Id.* at ¶ 8, 15.

{¶ 8} The Supreme Court of Ohio found the commission abused its discretion in exercising its continuing jurisdiction. *Id.* at ¶ 21. The Supreme Court held that when a claimant files a new request for TTD compensation, he is required to present evidence of new and changed circumstances that affects the grounds on which the commission previously denied the claimant compensation. *Id.* at ¶ 17-21. Because "the previous order denying TTD was not based on medical evidence but rather on the statutory bar of

compensation when a claimant unjustifiably refuses light-duty work," the claimant had to show new and changed circumstances tending to show his employment—not medical—situation had changed. *Id*. at ¶ 17-18.

{¶ 9}   Like the claimant in *Akron Paint & Varnish*, McCartney was previously denied workers' compensation benefits based on a statutory bar to compensation. In McCartney's case, that statutory bar was the doctrine of voluntary abandonment. Consequently, relying on *Akron Paint & Varnish*, the SHO held:

> [U]nder the holding in *Akron Paint & Varnish*, the mere finding of *medical* "new and changed circumstances," could not overcome the previous finding of a *legal* basis for the denial of Permanent Total Disability Compensation benefits. In other words, in accordance with the reasoning in *Akron Paint & Varnish*, in order to establish *legal* "new and changed circumstances," [McCartney] would need to demonstrate a return to the workforce, followed by a disability which removed [] him from employment, independently attributed to the conditions recognized in this claim.

(Emphasis in original.) (Stip. at 11-12.)

{¶ 10} The magistrate found the SHO neither erred in applying *Akron Paint & Varnish* to this case nor in concluding there are no new and changed circumstances justifying the commission's exercise of its continuing jurisdiction. We agree with the SHO and the magistrate that *Akron Paint & Varnish*, although interpreting the phrase "new and changed circumstances" in the context of TTD compensation, applies to this case. We, however, do not agree with the SHO and magistrate that no new and changed circumstances exist in this case.

{¶ 11} Since the August 20, 2016 decision denying McCartney PTD compensation, the General Assembly has abolished the doctrine of voluntary abandonment. R.C. 4123.58(D)(3) now states:

> Permanent total disability shall not be compensated when the reason the employee is unable to engage in sustained remunerative employment is due to any of the following reasons, whether individually or in combination:
>
> . . .

(3) The employee retired or otherwise *is not working* for reasons unrelated to the allowed injury or occupational disease.

(Emphasis added.) Previously, R.C. 4123.58(D)(3) instead stated, "[t]he employee retired or otherwise *voluntarily abandoned the workforce* for reasons unrelated to the allowed injury or occupational disease." (Emphasis added.)

{¶ 12} "The existence of a causal relationship between an allowed condition and an inability to work underlies all successful requests for disability compensation." *State ex rel. Liposchak v. Indus. Comm.*, 73 Ohio St.3d 194, 195 (1995). The voluntary abandonment doctrine recognized that a complete abandonment of employment could break the causal chain necessary to demonstrate that an injured worker was unemployed because of the injury. *State ex rel. AutoZone Stores, Inc. v. Indus. Comm.*, 2024-Ohio-5519, ¶ 20; *accord State ex rel. Bonnlander v. Hamon*, 2020-Ohio-4269, ¶ 14 (holding under the prior law that PTD compensation was "not available to an injured worker who [] voluntarily abandoned the workforce for reasons unrelated to his allowed conditions"). Voluntary abandonment of employment was primarily a question of intent, determined from " ' "[a]ll relevant circumstances existing at the time of the alleged abandonment." ' " *State ex rel. Klein v. Precision Excavating & Grading Co.*, 2018-Ohio-3890, ¶ 39, quoting *State ex rel. Diversitech Gen. Plastic Film Div. v. Indus. Comm.*, 45 Ohio St.3d 381, 383 (1989), quoting *State v. Freeman*, 64 Ohio St.2d 291, 297 (1980).

{¶ 13} Although the General Assembly rejected the voluntary abandonment doctrine, it maintained the requirement of a causal relationship between the allowed injury and the claimant's inability to work. In short, under the current law, a claimant is not entitled to PTD compensation if he or she "is not working for reasons unrelated to the allowed injury or occupational disease." R.C. 4123.58(D)(3).

{¶ 14} In interpreting a similar provision to R.C. 4123.58(D)(3), the Supreme Court held that the phrase "not working" means "not engaging in any substantially gainful employment." *AutoZone Stores, Inc.* at ¶ 25. The phrase "unrelated to" refers to "the lack of a connection or association between two events." *Id.* at ¶ 33. Thus, the phrase "is not working for reasons unrelated to the allowed injury" refers to the lack of a causal connection between "the allowed injury" and the reasons the claimant "is not working." *Id.*

{¶ 15} Initially, we conclude that the SHO committed legal error in ignoring the amendment of R.C. 4123.58(D)(3). The SHO required McCartney to present facts negating the voluntary abandonment doctrine; namely, that he had returned to the workforce and suffered an exacerbating injury that caused him to again leave work. But voluntary abandonment is irrelevant because it is no longer the law. The commission's continuing jurisdiction hinges on whether McCartney can demonstrate new and changed circumstances justifying consideration of his PTD application under the current law.

{¶ 16} In addition to disregarding the amendment of R.C. 4123.58(D)(3), the SHO ignored evidence relevant to the causation question. McCartney presented evidence that since the August 20, 2016 denial of his second PTD application, his level of whole person impairment has increased. As the magistrate found, Dr. Raymond Richetta and Dr. Michael W. Faust determined that McCartney is now permanently and totally disabled from engaging in any form of sustained remunerative employment due to his allowed psychological condition, dysthymic disorder. Prior to Dr. Faust's report, no independent specialist had concluded that impairment resulting from an allowed condition rendered McCartney incapable of working.

{¶ 17} When considering this evidence in conjunction with the amendment to R.C. 4123.58(D)(3), there are new and changed circumstances in this case. As currently written, R.C. 4123.58(D)(3) requires determination of the reasons the claimant "is not working," not whether the claimant abandoned the workforce at some earlier time. Here, the record contains new evidence from an independent specialist that McCartney is currently incapable of working due to one of his allowed conditions. This evidence is relevant to why McCartney "is not working." Consequently, McCartney satisfied his burden of presenting evidence of new and changed circumstances that would affect the prior denial of PTD compensation. Accordingly, we sustain McCartney's objection to the magistrate's decision.

{¶ 18} Nevertheless, we cannot grant McCartney the relief he initially requests: a writ ordering the commission to vacate its October 28, 2023 order denying him PTD compensation and to issue a new order granting him PTD compensation. By demonstrating new and changed circumstances, a claimant only overcomes a procedural hurdle to obtaining the commission's consideration of the merits of the claimant's PTD application. *State ex rel. Parrish v. Randolph*, 2024-Ohio-1135, ¶ 9 (10th Dist.). R.C. 4123.58(G) does

not change the burden, nature, or quantum of proof needed to establish entitlement to PTD compensation. *Id.* Thus, the applicant must still prove entitlement to PTD compensation by establishing under a preponderance of the evidence that the injury is permanent and the inability to work is causally related to the allowed conditions. *Id.* at ¶ 71. Because McCartney has not proven entitlement to PTD compensation, we cannot order the commission to issue an order granting him that compensation. Consequently, we instead grant McCartney the alternative writ he requests.

{¶ 19} Following an independent review of this matter, we sustain relator's objection. We adopt the magistrate's decision, with the exception of the last four paragraphs, which we reject. We grant a writ of mandamus ordering the commission to vacate its October 28, 2023 order and to conduct further proceedings on McCartney's February 28, 2023 application for PTD compensation.

*Objection sustained*;
*writ of mandamus granted.*

MENTEL and LELAND, JJ., concur.

# APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. David McCartney,             :

        Relator,                                  :

v.                                                      :                    No.  24AP-13

Simco Management, Inc., et al.,            :                (REGULAR CALENDAR)

        Respondents.                           :

---

## M A G I S T R A T E ' S   D E C I S I O N

Rendered on September 9, 2024

---

*Schiavoni*, *Schiavoni*, *Bush & Muldowney*, and *Shawn R. Muldowney*, for relator.

*Dave Yost*, Attorney General, and *Daniel G. Schumick*, for respondent Industrial Commission of Ohio.

---

### IN MANDAMUS

{¶ 20} Relator David McCartney has sought and been denied permanent total disability ("PTD") compensation three times. McCartney now seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its most recent order denying McCartney PTD compensation and issue a new order granting such compensation. For the reasons that follow, the magistrate recommends denying McCartney's request for the writ.

## I. Findings of Fact

{¶ 21} 1. McCartney was injured in the course of and arising out of his employment with respondent Simco Management, Inc. on March 9, 2001. McCartney's workers' compensation claim was ultimately allowed for the following conditions: sprain lumbar region; lumbosacral sprain; herniated disc L5-S1; protruding disc at L4-L5; aggravation of degenerative arthritis with facet hypertrophy at L3-L4, L4-L5, L5-S1; and dysthymic disorder. At some point following his industrial injury, McCartney received an initial award of permanent partial disability ("PPD") compensation.

{¶ 22} 2. McCartney first sought PTD compensation in an application filed on June 26, 2007.

{¶ 23} 3. A commission staff hearing officer ("SHO") held a hearing on the PTD application on February 12, 2008. The SHO issued an order denying the application on February 15, 2008. The SHO found McCartney had not undergone any surgeries related to the claim, but instead received treatment that was "conservative in nature, consisting mainly of physical therapy and medical management." (Stip. at 125.) Based on the opinions of two physicians, the SHO concluded that "when all the allowed conditions are considered, [McCartney] retains the residual functional capacity to perform sustained remunerative employment at the sedentary and light work levels, physically and has no psychological limitations from performing sustained remunerative employment." (Stip. at 126.)

{¶ 24} The SHO noted that McCartney had not worked since November 2002. Since that time, the SHO found there was no evidence that McCartney had completed any type of vocational retraining, additional education, or any specialized training or licensure. Considering nonmedical disability factors in conjunction with medical restrictions and limitations, the SHO found McCartney retained the capacity to perform sustained remunerative employment at the sedentary and light work levels. As a result, the SHO concluded McCartney was not permanently and totally disabled from all sustained remunerative employment.

{¶ 25} 4. McCartney again sought PTD compensation in an application dated April 11, 2014.

{¶ 26} 5. McCartney's second application for PTD compensation was supported by the January 16, 2016 report of Lynn Ross DiMarzio, Ph.D. Dr. DiMarzio found that

McCartney's allowed psychological condition was permanent. Dr. DiMarzio estimated that "the degree of permanent partial disability, due to the psychiatric condition alone, is in the moderate range of 30 percent of the whole person." (Stip. at 120.) Dr. DiMarzio noted that McCartney was not a viable candidate for vocational rehabilitation. It was Dr. DiMarzio's opinion that McCartney was permanently and totally disabled from any and all forms of remunerative employment.

{¶ 27} 6. McCartney's second PTD application was also supported by the February 23, 2016 report of Randall J. Hartwig, D.O. Based on the allowed conditions, McCartney's pain, McCartney's inability to perform "simple activities such as lifting, pushing, pulling, bending, and stooping," and McCartney's need to "use a cane on a daily basis for balance and sometimes even a walker," Dr. Hartwig opined that McCartney was "permanently and totally impaired from sustained remunerative employment due to the allowed conditions." (Stip. at 124.)

{¶ 28} 7. James M. Lyall, Ph.D., conducted a psychological examination of McCartney on May 2, 2016. Dr. Lyall found McCartney's impairment due to the allowed psychological condition was "twenty percent * * * at Class 2 and yields a GAF value of 61." (Stip. at 104.) Based on this, Dr. Lyall found McCartney was capable of work with the limitation that he "should avoid [high] stress, [high] production jobs." (Stip. at 106.)

{¶ 29} 8. Paul T. Scheatzle, D.O., conducted an independent medical evaluation of McCartney on May 23, 2016. Dr. Scheatzle found McCartney was capable of sedentary work activities with the following restrictions: "He could lift up to 10 lbs occasionally but no frequent lifting. He could stand and walk occasionally or sit frequently but needs his cane to walk 150 feet. Would recommend no climbing or crawling activities. No repetitive bending or twisting. He would need to be allowed to change position on an as needed basis." (Stip. at 97.) Dr. Scheatzle found McCartney had a combined whole person impairment of 26 percent based on the allowed physical conditions.

{¶ 30} 9. An SHO conducted a hearing on McCartney's second PTD application on August 16, 2016. The SHO denied the application in an order issued on August 20, 2016. In the order, the SHO noted McCartney had not undergone any surgery for the allowed conditions in the claim, but was at that time treating the allowed physical conditions through pain medication. McCartney was not at that time receiving treatment for the

allowed psychological condition in the claim. The SHO noted McCartney's testimony at the hearing that in the eight years since the initial denial of PTD compensation, McCartney had "made no effort to return to work as he began receiving Social Security Disability in 2007." (Stip. at 92.) The SHO found that "the failure to seek employment or to attempt vocational rehabilitation, despite the finding by the [commission] in 2008 that [McCartney] was capable of sustained remunerative employment, constitutes a voluntary abandonment of the workforce." (Stip. at 93.) The SHO found that McCartney "left the workforce for reasons other than the allowances in this claim." (Stip. at 93.) As a result, the SHO found McCartney was precluded from receiving PTD compensation.

{¶ 31} 10. Beginning in January 2018, Gamaliel Batalla, M.D., performed a series of bilateral lumbar medial branch radiofrequency ablation procedures on McCartney. Dr. Batalla submitted a series of C-9 requests for medical service reimbursement forms associated with these procedures.

{¶ 32} 11. A commission district hearing officer ("DHO") issued an order on January 27, 2022 granting an application filed by McCartney for an increase in percentage of PPD. The DHO found that McCartney's "percentage of [PPD] has increased and is now 37 percent, which is an increase of 5 percent, and [McCartney] is therefore entitled to an additional award of compensation for a period of 10 weeks." (Stip. at 60.)

{¶ 33} 12. McCartney filed a third application for PTD compensation on February 28, 2023.

{¶ 34} 13. McCartney's third PTD application was supported by the report of Raymond D. Richetta, Ph.D., who conducted a psychological evaluation of McCartney on July 15, 2022. As noted in Dr. Richetta's report, McCartney stated that he last worked in 2001 or 2002. McCartney reported that he was being treated by Dr. Batalla for radiofrequency ablation. Dr. Richetta found the "allowed psychological condition has reached a Class 3, Moderate impairment, corresponding to a 38% impairment of the whole person." (Stip. at 49.) Dr. Richetta found McCartney had reached maximum medical improvement ("MMI") for the allowed psychological condition. Dr. Richetta noted that McCartney was not planning on returning to psychotherapy or mental health treatment and stated that McCartney was "unlikely to make significant functional progress even with a return to mental health treatment." (Stip. at 49.) Based on the evaluation, Dr. Richetta

found McCartney was psychologically unable to return to work based on the certain listed psychological symptoms that would form a barrier to employment. As a result, Dr. Richetta found McCartney to be permanently and totally disabled from engaging in any form of sustained remunerative employment due to the allowed psychological condition alone.

{¶ 35} 14. Michael W. Faust, Ph.D., examined McCartney on August 10, 2023 and completed a commission mental and behavioral health specialist report on August 24, 2023. Dr. Faust found McCartney was at MMI with regard to the allowed psychological condition and had a whole person impairment of 36.25 or 37 percent, which was a Class 3 Moderate Impairment. Dr. Faust reported that McCartney "described chronic symptoms of depression, which are consistent with and reasonably expected to arise from [] both the allowed psychological conditions and multiple unrelated medical conditions." (Stip. at 25.) Dr. Faust noted that McCartney "discussed continued symptoms of depression that would impair his ability to maintain a regular work schedule, interact with others, and maintain concentration to task in order to complete job duties." (Stip. at 26.) Dr. Faust made the following findings in an occupational activity assessment: "McCartney is exhibiting psychological symptoms that are consistent with the allowed condition of Dysthymic Disorder, with symptoms of depression, which impact functional capacity and results in impairment in overall daily activities, engagement, mood, social interest, task completion, and concentration, persistence and pace." (Stip. at 27.) Because McCartney's symptoms were "chronic and significantly impact[ing] daily functioning," Dr. Faust concluded that McCartney would be "unable to engage in work activities." (Stip. at 27.) Based solely on the impairment resulting from the allowed psychological condition, Dr. Faust found McCartney to be incapable of work.

{¶ 36} 15. A hearing on McCartney's third application for PTD compensation was held before a SHO on October 24, 2023. In an order issued on October 28, 2023, the SHO denied the application because McCartney failed to demonstrate new and changed circumstances as required under R.C. 4123.58(G) in order to permit the commission to evaluate the application. The SHO detailed the history of the prior two applications for PTD compensation and summarized the applicable law under R.C. 4123.58(G). The SHO summarized the arguments of McCartney's attorney at the hearing on the third application for PTD compensation, stating that counsel "argued that the continued treatments under

this claim established the 'new and changed circumstances' necessary for the [commission's] third adjudication of [McCartney's] application for [PTD] benefits." (Stip. at 11.) The SHO noted that "[n]o case law was presented in support of Counsel's argument." (Stip. at 11.)

{¶ 37} Citing *State ex rel. Ross v. Indus. Comm.*, 118 Ohio St.3d 73, 2008-Ohio-1739, the SHO stated that "something more than continued treatment" was needed "to establish new and changed circumstances even in the context of permanent partial disability, which is merely based upon the disability caused by the conditions recognized in a claim," as compared to "the more stringent analysis required in finding that the disability caused by the conditions recognized in a claim precludes a return to any sustained remunerative employment, as is the case of permanent total disability." (Emphasis removed.) (Stip. at 11.) Considering this, the SHO found that "the mere continuation of treatment could not be sufficient to establish 'new and changed circumstances,' in the absence of proof that the treatment was accompanied by a disability which precluded a return to sustained remunerative employment." (Stip. at 11.)

{¶ 38} Next, citing *State ex rel. Akron Paint & Varnish, Inc. v. Gullotta*, 131 Ohio St.3d 231, 2012-Ohio-542, the SHO stated that "the mere finding of *medical* 'new and changed circumstances,' could not overcome the previous finding of a *legal* basis for the denial of [PTD] [c]ompensation benefits." (Emphasis in original.) (Stip. at 11.) From this, the SHO reasoned that under *Akron Paint*, "in order to establish *legal* 'new and changed circumstances,' [McCartney] would need to demonstrate a return to the workforce, followed by a disability which removed [McCartney] from employment, independently attributed to the conditions recognized in this claim." (Emphasis in original.) (Stip. at 11-12.) As a result, the SHO found McCartney had failed to demonstrate new and changed circumstances sufficient to permit the commission to address McCartney's third application for PTD compensation. The SHO stated the order was based on the prior two SHO orders denying PTD compensation and the testimony presented at the hearing that McCartney had "made no attempt to participate in vocational rehabilitation or to return to the workforce." (Stip. at 12.)

{¶ 39} 16. McCartney requested reconsideration of the SHO's order on November 2, 2023.

{¶ 40} 17. On November 14, 2023, the commission denied McCartney's request for reconsideration.

{¶ 41} 18. McCartney filed a complaint for writ of mandamus on January 5, 2024.

## II. Discussion and Conclusions of Law

{¶ 42} McCartney seeks a writ of mandamus ordering the commission to grant him PTD compensation.

### A. Requirements for Mandamus

{¶ 43} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, McCartney must establish a clear legal right to the requested relief, that the commission has a clear legal duty to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A writ of mandamus will issue where "there is a legal basis to compel the commission to perform its clear legal duty under the law, including when the commission has abused its discretion in carrying out its duties." *State ex rel. Belle Tire Distribs. v. Indus. Comm.*, 154 Ohio St.3d 488, 2018-Ohio-2122, ¶ 25. "Where a commission order is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record, the order will not be disturbed as manifesting an abuse of discretion." *State ex rel. Mobley v. Indus. Comm. of Ohio*, 78 Ohio St.3d 579, 584 (1997). Additionally, a writ of mandamus " 'may issue against the Industrial Commission if the commission has incorrectly interpreted Ohio law.' " *State ex rel. Cassens Corp. v. Indus. Comm. of Ohio*, 174 Ohio St.3d 414, 2024-Ohio-526, ¶ 10, quoting *State ex rel. Gassmann v. Indus. Comm.*, 41 Ohio St.2d 64, 65 (1975).

### B. Statutory Requirements for Permanent Total Disability

{¶ 44} "[T]he purpose of permanent and total disability benefits is to compensate injured persons for impairment of earning capacity." *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167, 170 (1987), citing *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 42 Ohio St.2d 278 (1975). "Permanent total disability is the inability to do any sustained remunerative work." *State ex rel. Schultz v. Indus. Comm.*, 96 Ohio St.3d 27, 2002-Ohio-3316, ¶ 61, citing *Stephenson* at 170. *See* Ohio Adm.Code 4121-3-34(B)(1).

{¶ 45} R.C. 4123.58 governs compensation for PTD, allowing compensation only when one of the following conditions is met:

> (1) The claimant has lost, or lost the use of both hands or both arms, or both feet or both legs, or both eyes, or of any two thereof; however, the loss or loss of use of one limb does not constitute the loss or loss of use of two body parts;
>
> (2) The impairment resulting from the employee's injury or occupational disease prevents the employee from engaging in sustained remunerative employment utilizing the employment skills that the employee has or may reasonably be expected to develop.

R.C. 4123.58(C). Circumstances prohibiting the awarding of PTD compensation are contained in R.C. 4123.58(D), which was added through the General Assembly's enactment of 2006 Am.Sub.S.B. No. 7. At the time it became effective on June 30, 2006, R.C. 4123.58(D) provided:

> Permanent total disability shall not be compensated when the reason the employee is unable to engage in sustained remunerative employment is due to any of the following reasons, whether individually or in combination:
>
> (1) Impairments of the employee that are not the result of an allowed injury or occupational disease;
>
> (2) Solely the employee's age or aging;
>
> (3) The employee retired or otherwise voluntarily abandoned the workforce for reasons unrelated to the allowed injury or occupational disease.
>
> (4) The employee has not engaged in educational or rehabilitative efforts to enhance the employee's employability, unless such efforts are determined to be in vain.

Former R.C. 4123.58(D). The enactment of 2020 Am.Sub.H.B. No. 81 altered R.C. 4123.58(D)(3) effective September 15, 2020 by removing "voluntarily abandoned the workforce" and inserting "is not working" in its place. Thus, current R.C. 4123.58(D) provides as follows:

> Permanent total disability shall not be compensated when the reason the employee is unable to engage in sustained remunerative employment is due to any of the following reasons, whether individually or in combination:

(1) Impairments of the employee that are not the result of an allowed injury or occupational disease;

(2) Solely the employee's age or aging;

(3) The employee retired or otherwise is not working for reasons unrelated to the allowed injury or occupational disease.

(4) The employee has not engaged in educational or rehabilitative efforts to enhance the employee's employability, unless such efforts are determined to be in vain.

{¶ 46} R.C. 4123.58 was again amended by 2021 Am.Sub.H.B. No. 75 ("H.B. 75"), which in part added R.C. 4123.58(G).[1] Effective September 28, 2021, the statute provides:

---

[1] Following the amendments to R.C. 4123.58 enacted in H.B. 75, R.C. 4123.58 was amended by the 134th General Assembly a second time through the enactment of 2023 Am.Sub.H.B. No. 281 ("H.B. 281"). H.B. 281, which became effective April 6, 2023, made a minor change to R.C. 4123.58(F) by striking through and thereby deleting the word "handicapped," which immediately preceded "individuals," and inserting the word "with disabilities" after the aforementioned "individuals." However, the remaining text of R.C. 4123.58 in H.B. 281 did not include the text of R.C. 4123.58(G). H.B. 281 gave no specific indication that it intended to amend R.C. 4123.58 by removing R.C. 4123.58(G) through the usual means of striking through the existing text of R.C. 4123.58(G). *See* Ohio Adm.Code 103-5-01 ("Old matter that is to be omitted from an existing codified or uncodified section is indicated by retaining the matter as it appears in the section and striking it through with a horizontal line."). Section 2 of H.B. 281 provided in pertinent part: "That existing sections * * * 4123.58 * * * of the Revised Code are hereby repealed." *See State v. Wilson*, 77 Ohio St.3d 334, 337 (1997) (stating in considering the effect of a former version of R.C. 151.52 that "[m]atter to be affected by an 'existing sections' repeal must appear in the body of the enrolled Act and must be stricken through").

The Legislative Service Commission includes the text of R.C. 4123.58(G) in its official online version of the Revised Code. The following note from the Legislative Service Commission appears after the text of R.C. 4123.58 on its website: "The Legislative Service Commission presents the text of this section as a composite of the section as amended by multiple acts of the General Assembly. This presentation recognizes the principle stated in R.C. 1.52(B) that amendments are to be harmonized if reasonably capable of simultaneous operation." Legislative Service Commission, *Section 4123.58*, https://codes.ohio.gov/ohio-revised-code/section-4123.58 (accessed August 8, 2023).

The provision in R.C. 1.52 noted by the Legislative Service Commission provides:

> If amendments to the same statute are enacted at the same or different sessions of the legislature, one amendment without reference to another, the amendments are to be harmonized, if possible, so that effect may be given to each. If the amendments are substantively irreconcilable, the latest in date of enactment prevails. The fact that a later amendment restates language deleted by an earlier amendment, or fails to include language inserted by an earlier amendment, does not of itself make the amendments irreconcilable. Amendments are irreconcilable only when changes made by each cannot reasonably be put into simultaneous operation.

R.C. 1.52(B). *See State v. McCullough*, 9th Dist. No. 28917, 2018-Ohio-4499, ¶ 11-12; *Wilson* at 337.

> If the industrial commission has adjudicated a claimant's application for compensation payable under this section for permanent total disability and issued a final order denying compensation for that application, the claimant shall present evidence of new and changed circumstances before the industrial commission may consider a subsequent application filed by the claimant for compensation under this section for the same injury or occupational disease identified in the previous application.

R.C. 4123.58(G). "[T]he requirement in R.C. 4123.58(G) that a claimant demonstrate new or changed circumstances creates a procedural mechanism for the commission's adjudication of subsequent PTD applications filed after the commission's denial of an initial application for PTD." *State ex rel. Parrish v. Randolph*, 10th Dist. No. 22AP-134, 2024-Ohio-1135, ¶ 9. This procedural mechanism "requir[es] only that the claimant make an initial showing sufficient for the commission to consider the subsequent PTD application." *Id.* Importantly, R.C. 4123.58(G) "does not foreclose a claimant's ability to make a subsequent application for PTD, impact the analysis of the merits of the PTD application, or change the burden, nature, or quantum of proof a claimant must demonstrate to be entitled to PTD compensation." *Id.*

## C. Analysis

{¶ 47} McCartney asserts the commission erred in finding he did not demonstrate new and changed circumstances as required under R.C. 4123.58(G) in order for his third PTD application to be considered. McCartney argues the record clearly reflects new and changed circumstances based on extensive ongoing treatment and the percentage increase in McCartney's PPD.

{¶ 48} The phrase "new and changed circumstances" is not defined by R.C. 4123.58 or otherwise in the Workers' Compensation Act. However, requiring a party to demonstrate new and changed circumstances before the commission may take a particular action is not a new concept for workers' compensation cases. Similar requirements can also be found in

---

The magistrate infers the absence of R.C. 4123.58(G) from the text of H.B. 281 may have occurred because H.B. 281 was initially passed by the House on June 16, 2021, which was before the effective date of H.B. 75. Regardless, in the instant matter, no party contends that R.C. 4123.58(G) was not in effect at the time of the SHO's order denying McCartney's third application for PTD compensation. As a result, it is not necessary at this time to resolve the impact, if any, of H.B. 281 to R.C. 4123.58(G).

the context of the commission's exercise of continuing jurisdiction under R.C. 4123.52 and claims for an increase in percentage of PPD under R.C. 4123.57(A). *See State ex rel. Knapp v. Indus. Comm.*, 134 Ohio St.3d 134, 2012-Ohio-5379, ¶ 13 (listing new and changed circumstances as one of several possible prerequisites for the exercise of the commission's continuing jurisdiction); *State ex rel. Hobbs v. Indus. Comm. of Ohio*, 10th Dist. No. 22AP-308, 2023-Ohio-1759, ¶ 10, quoting R.C. 4123.57 (stating that "R.C. 4123.57(A) requires an application for an increase in PPD to be 'supported by substantial evidence of new and changed circumstances developing since the time of the hearing on the original or last determination' ").

{¶ 49} Given the inherently factual nature of the determination, the contours of the type and quantity of evidence sufficient to establish new and changed circumstances have not been precisely defined. Instead, the commission and courts have examined this requirement on a case-by-case basis, shaping some guiding principles along the way. *See Ross*, 2008-Ohio-1739, at ¶ 17 (stating that "the mere submission of new evidence is not automatically a new and changed circumstance"); *State ex rel. Keith v. Indus. Comm.*, 62 Ohio St.3d 139, 141-42 (1991) (finding that establishing new and changed circumstances entails demonstrating that "conditions have changed subsequent to the initial award," and not simply evidence which was "newly acquired"); *State ex rel. Gen. Motors Corp., Chevrolet Motor Div. v. Indus. Comm.*, 54 Ohio St.2d 333, 334 (1978) (holding that "a medical report or reports concluding percentage increases, beyond percentages previously reported in connection with the original claim, is not an improper consideration under R.C. 4123.57(B) of 'new and changed circumstances developing since the time of the hearing on the original or last determination' "); *Knapp*, 2012-Ohio-5379, at ¶ 17 (applying a previously effective commission resolution pertaining to the exercise of continuing jurisdiction pursuant to R.C. 4123.52 to find that "[n]ew and changed circumstances means 'there exists newly discovered evidence' "); *Akron Paint*, 2012-Ohio-542, at ¶ 17; *State ex rel. Rocktenn Co. v. Long*, 10th Dist. No. 12AP-862, 2013-Ohio-5296, ¶ 8.

{¶ 50} Here, the SHO denied McCartney's third PTD application on the basis that he failed to demonstrate new and changed circumstances in accordance with the holding of *Akron Paint*. In that case, a commission SHO denied the claimant's request for TTD compensation because the claimant refused to return to his light-duty job or accept his

employer's offer of suitable alternative employment. After the claim was allowed for an additional medical condition, the claimant again sought TTD compensation. An SHO ultimately granted the request, finding the claimant's resignation was not a voluntary abandonment of employment that would preclude future TTD compensation.

{¶ 51} In a mandamus action brought by the employer, the Supreme Court of Ohio examined whether the commission improperly exercised continuing jurisdiction by granting TTD compensation after denying the prior request. Examining whether there existed new and changed circumstances, the court recognized that "the worsening of an existing medical condition or a newly allowed medical condition often serves as new and changed circumstances justifying the exercise of continuing jurisdiction to modify a previous order." *Akron Paint* at ¶ 17. Unlike other cases involving such circumstances, however, the court found that the previous order denying TTD compensation in that case "was not based on *medical evidence* but rather on the *statutory bar* of compensation when a claimant unjustifiably refuses light-duty work made available by the employer." (Emphasis added.) *Id.*

{¶ 52} Noting that the claimant admitted his prior request for TTD compensation was barred by his refusal to accept a suitable job, the court in *Akron Paint* found that "[n]othing had changed that would affect the finding in that order that [the claimant] had unjustifiably refused to do his light-duty job and also refused his employer's offer of an alternative light-duty position." *Id.* at ¶ 21. The court found the claimant presented "no evidence of circumstances, new or changed, that would demonstrate a loss of wages as a result of TTD." *Id.* Without those circumstances showing a loss of wages, an award of TTD compensation was not warranted. As a result, the court found the commission abused its discretion when it exercised continuing jurisdiction.

{¶ 53} Like in *Akron Paint*, McCartney was previously denied benefits not on a medical basis, but rather due to a statutory bar—namely, the restriction on granting PTD compensation contained in R.C. 4123.58(D)(3). In the August 20, 2016 order denying McCartney's second application for PTD compensation, the SHO found that McCartney was precluded from receiving such benefits because McCartney had failed to seek employment or attempt vocational rehabilitation despite a finding in the February 15, 2008 order denying McCartney's first application for PTD compensation that McCartney was

capable of sustained remunerative employment. The SHO found those circumstances constituted a voluntary abandonment of the workforce. Therefore, because McCartney "left the workforce for reasons other than the allowances in this claim," the SHO concluded he was precluded from receiving PTD compensation. (Stip. at 93.) In denying McCartney's third application for PTD compensation, the SHO found that in accordance with *Akron Paint*, McCartney was required to overcome this finding of a legal basis for the denial of PTD compensation.

{¶ 54} In his brief in this mandamus action, McCartney does not directly address the application of the holding in *Akron Paint* to the circumstances of this case. McCartney has not argued or demonstrated, either in this action or before the commission, that new or changed circumstances exist that would affect the finding that McCartney left the workforce for reasons other than the allowed injury. *See Akron Paint* at ¶ 21. Though the worsening of a condition or an increase in the percentage of PPD may be sufficient to show new and changed circumstances in some cases where the denial of PTD compensation was based on medical evidence, McCartney does not explain how his evidence addresses the requirement to show a change in the legal basis precluding him from receiving compensation in accordance with *Akron Paint*. Nor does McCartney attempt to argue the SHO erred in applying *Akron Paint* to find that McCartney was required to demonstrate new or changed circumstances that would affect the legal basis underlying the denial of the second application for PTD compensation. As a result, based on the arguments presented in this mandamus action, McCartney has failed to establish a clear legal right to the requested relief or that the commission was under a duty to provide it. *See generally State ex rel. Syx v. Stow City Council*, 161 Ohio St.3d 201, 2020-Ohio-4393, ¶ 27 (stating that "in a mandamus case, the *relator* has the burden to show the existence of a legal right and a legal duty that are *clear*" (Emphasis in original.)).

{¶ 55} Finally, McCartney argues the commission abused its discretion because it failed to fully explain the evidence relied upon and the reasoning for its decision. As with any order granting or denying benefits to a claimant, an order of the commission finding no new and changed circumstances to permit review of a subsequent application for PTD compensation must include a statement listing the evidence relied upon and a brief explanation of the commission's reasoning for its decision. *State ex rel.*

*Prinkey v. Emerine's Towing, Inc.*, 10th Dist. No. 22AP-264, 2024-Ohio-1137, ¶ 13. *See State ex rel. Merritt v. Indus. Comm.*, 161 Ohio St.3d 380, 2020-Ohio-4379, ¶ 3, quoting *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991), syllabus (stating that "[i]n an order granting or denying benefits to a claimant, the commission must 'specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision' "). Where the commission fails to comply with this requirement, as recognized in *Noll* and followed in subsequent cases, the commission has abused its discretion. *Merritt* at ¶ 3.

{¶ 56} Contrary to McCartney's contention, the SHO's October 28, 2023 order denying the third application for PTD compensation was detailed and thorough. The SHO explained the evidence relied upon and the reasoning for the decision. Nothing more is required under *Noll* and its progeny. McCartney has not demonstrated the commission abused its discretion by failing to adequately explain its order.

**D. Conclusion**

{¶ 57} Accordingly, it is the decision and recommendation of the magistrate that McCartney's request for a writ of mandamus should be denied.

/S/ MAGISTRATE
JOSEPH E. WENGER IV


**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.